[*No. 32850.* Department Two. January 8, 1955.]

WILLARD G. PLATTS et al., *Appellants,* v. C. F. ARNEY et al., *Respondents.*[1]

[1]Reported in 278 P. (2d) 657.

*Wright, Booth & Beresford*, for appellants.

*Karr, Tuttle & Campbell* and *Robert Keller*, for respondents.

WEAVER, J.—This appeal presents two questions: (1) Does the contract, upon which plaintiff sues for damages for an alleged breach, fail to meet the requirements of the statute of frauds; and (2) is the expense of a pretrial deposition of a witness (not a party to the action), taken for the purpose of discovery, taxable as costs, when the deposition is only used at trial in the cross-examination of the witness?

We will refer to Willard G. Platts and W. G. Platts, Inc., a Washington corporation, as plaintiff; and to C. F. Arney and Betty E. Arney, his wife, as defendant.

June 21, 1952, plaintiff and defendant entered into an "Exchange Contract." Each party owned three parcels of property subject to the exchange.

Plaintiff owned: (1) a residence to be transferred to defendant by real-estate contract; (2) a fuel yard and business consisting of real and personal property, including delivery trucks and a trade name, to be transferred to defendant by a combined real-estate and conditional sales contract; and (3) an inventory of fuel valued at eighteen thousand dollars, to be transferred to defendant by bill of sale. A value was assigned to each parcel of property, all of which were to be free of encumbrances. The values totaled $113,000.

Defendant owned: (1) certain real property, subject to a lease to a third party, which property was to be deeded and the lease assigned to plaintiff; (2) a trailer court to be deeded to plaintiff; and (3) a chattel mortgage and a conditional sales contract, of the present value of $14,834.37, to be assigned to plaintiff. Defendant's property was valued at $49,834.37. It was subject to a mortgage of $8,137.

The difference between the valuations was to be represented by the contracts of sale (providing for periodic payments) wherein plaintiff was vendor and defendant vendee.

The exchange contract designates a "closing agent," who was authorized to order reports preliminary to title policies. In it, plaintiff and defendant agreed

". . . to deliver to the closing agent properly executed instruments to effectuate his agreement . . ."

The closing agent was authorized to make the exchange of properties by delivery of the necessary instruments on the first day of August, 1952.

The exchange contract, which is signed and acknowledged by all of the necessary parties, is silent as to many of the terms to be embodied in the future contracts we have described. However, it designates the purchase prices, the down payments to be credited, the rate of monthly payments, and the interest on the deferred balances.

Before we can decide whether the transaction is within the purview of the statute of frauds, additional facts must be considered.

Pursuant to the agreement, the plaintiff:

(a) Executed and acknowledged a real-estate contract for the residence property described in the exchange contract. *This contract is signed by defendant.*

(b) Executed and acknowledged a real-estate contract for the real property occupied by the fuel yard, as described in the exchange contract. *This contract is also signed by defendant.* Instead of making a conditional sales contract of the fuel yard personal property, he executed and acknowledged a bill of sale to defendant of this personal property, including the trade name under which he did business. In return, defendant executed a promissory note to plaintiff which was secured by a chattel mortgage, covering the property described in plaintiff's bill of sale to him.

(c) Executed and acknowledged a bill of sale to defendant of a "miscellaneous fuel inventory of the guaranteed wholesale cost of . . . $18,000 . . ."

(d) Furnished a certified copy of the minutes of a special joint meeting of stockholders and trustees of W. G.

Platts, Inc., a corporation, authorizing the officers of the corporation to execute the documents which required corporate signatures.

On the other hand, defendant:

(a) Executed and acknowledged two deeds to plaintiff of the real property as described in the exchange contract.

(b) Executed and acknowledged an assignment to plaintiff of his (defendant's) interest in the lease, chattel mortgage, and conditional sales contract, as described in the exchange contract.

The court found that each of the instruments which we have described was executed by the parties in the office of the closing agent on July 17, 1952, and was retained by the closing agent until introduced in evidence at the trial of this action. There is no claim that any of the instruments are insufficient, except as hereinafter noted.

The real-estate contract, by which the real property occupied by the fuel yard was to be transferred to defendant, described five and one-half lots "in Block 293, Capital Addition to the City of Yakima." *This contract was signed by both parties.*

Just prior to August 1, 1952, it was discovered that one lot and one half of another, although correctly located in Block 293, were in "Kers Addition to North Yakima (now Yakima)" instead of in the Capital addition of the city.

Thereupon, the plaintiff executed and acknowledged another real-estate contract, upon the same printed form, in which the description was corrected. This contract was placed with the closing agent, but not signed by defendant.

The closing agent advised the parties to meet in Yakima at plaintiff's office on August 1, 1952, so that the various instruments of title and possession of the properties might be delivered.

July 31, 1952, defendant notified plaintiff and the closing agent that he rescinded the exchange contract because of plaintiff's failure "to comply with the terms and provisions thereof."

August 21, 1952, plaintiff filed this action for damages for breach of contract. Defendant answered, pleading eight

separate affirmative defenses. The trial court made no findings or conclusions on the various issues presented, except to conclude:

"That the 'Exchange Contract' (Exhibit 'A') was an unenforceable agreement for the reason that it was too indefinite and did not comply with the Statute of Frauds."

Plaintiff appeals from a judgment dismissing his action.

For the purpose of this opinion, we accept defendant's argument and conclusion (adopted by the trial court) that the exchange contract of June 21, 1952, standing alone, is but a contract to enter into future contracts, the terms of which are not determined; and, hence, is indefinite, uncertain, and unenforcible. *Hubbell v. Ward,* 40 Wn. (2d) 779, 246 P. (2d) 468 (1952); *Keys v. Klitten,* 21 Wn. (2d) 504, 151 P. (2d) 989 (1944).

Subsequent to the execution of the exchange contract, the parties prepared, signed, and acknowledged every additional contract necessary to complete the transaction described in the exchange contract. Thus, it became definite and certain in all material matters. Only one thing had to occur before the transaction was completed, and neither party had control over it—the passage of time until August 1, 1952, when the closing agent was authorized to deliver the various instruments to the party entitled to them.

Courts do not lightly declare a contract void for lack of certainty, but will endeavor to discover the true meaning and intent of the parties. *Westland Const. Co. v. Chris Berg, Inc.,* 35 Wn. (2d) 824, 833, 215 P. (2d) 683 (1950). The intent of the parties is definite and unmistakable when the exchange contract and the various instruments executed pursuant to it are examined.

The defense of uncertainty in the terms of a contract is not applicable in an action based upon the contract when performance has made it certain in every respect in which it might have been regarded as uncertain. *McDougall v. McDonald,* 86 Wash. 334, 337, 150 Pac. 628 (1915); *Christofersen v. Radovich,* 23 Wn. (2d) 846, 849, 162 P. (2d) 830 (1945).

It is the execution of the documents that made the exchange contract definite and certain which distinguishes the case before us from *Hubbell v. Ward, supra,* and *Keys v. Klitten, supra.*

■■ Construed together, the instruments signed by the defendant contain all of the essential terms of the agreement between the parties and are sufficient to satisfy the statute of frauds.

Several writings signed by the party to be charged, though executed at different times, may be construed together for the purpose of ascertaining the terms of a contract, and for the purpose of taking an action founded thereon out of the operation of the statute of frauds, if it appears, from the instruments themselves, that they are part of the same transaction. *Thayer v. Luce,* 22 Ohio St. 62 (1871); *Hibbard v. Hatch Storage Battery Co.,* 174 Mass. 296, 54 N. E. 658 (1899); see *Grant v. Auvil,* 39 Wn. (2d) 722, 724, 238 P. (2d) 393 (1951).

*McLain v. Healy,* 98 Wash. 489, 168 Pac. 1 (1917), upon which defendant relies, is distinguishable. Therein, this court held:

"An enforcible escrow must rest upon an enforcible contract, and an enforcible contract for the exchange of real property cannot rest in parol, but depends wholly for its validity upon an agreement in writing or some sufficient memorandum which would avoid the statute of frauds." (page 491)

The alleged exchange contract was an oral agreement. The only writing subscribed by the party to be bound was the deed deposited in escrow, but that deed did not contain the contract it was necessary to prove before recovery could be had.

■ We have not overlooked the discrepancy in the legal description of the real property described in the real-estate contract covering the fuel yard, but we consider it of no weight upon the problem before us. In *Lofberg v. Viles,* 39 Wn. (2d) 493, 236 P. (2d) 768 (1951), this court held that where the requirements of the statute of frauds pertaining to real-estate contracts are otherwise satisfied, the legal de-

scription of the property involved may be reformed on the ground of mutual mistake, provided the fact of a mutual mistake is established. (See *Bergstrom v. Olson,* 39 Wn. (2d) 536, 236 P. (2d) 1052 (1951).)

It is apparent from the instrument itself that the mistake is one of the scrivener, adopted by both parties when they signed the real-estate contract.

The court erred when it concluded that the transaction did not meet the requirements of the statute of frauds.

Prior to trial, defendant took the depositions of two witnesses, not parties to the action. The witnesses were present and testified at the trial. The depositions were not used at the trial for the purpose of introducing testimony. One was used in cross-examination, the other not at all. The only conclusion which can be drawn is that they were taken for the purpose of pretrial discovery. Plaintiff (appellant) assigns error to the trial court's refusal to strike the costs of the depositions from the cost bill.

Some confusion has been added to the question because of Rule 26 (g), Rules of Pleading, Practice and Procedure, 34A Wn. (2d) 84 (effective January 2, 1951), which provided that the expense of taking a deposition of a witness should not be taxed as costs. Subdivision (g) of this rule was abrogated January 2, 1953, so that this portion of the rule of court need not be considered further.

The right to costs is not a matter of procedure but is a substantive right. *United States v. French Sardine Co.,* 80 F. (2d) 325 (1935). It is purely a matter of statutory regulation. *State ex rel. Fosburgh v. Ronald,* 25 Wn. (2d) 276, 277, 170 P. (2d) 865 (1946).

It is argued that the statutory authority for the allowance of the costs we are considering is found in RCW 4.84.090, reading as follows:

"The prevailing party, in addition to allowance for costs, as provided in RCW 4.84.080, shall also be allowed for all necessary disbursements, including the fees of officers allowed by law, the fees of witnesses, *the necessary expenses of taking depositions,* by commission or otherwise, and the compensation of referees. . . ." (Italics ours.)

A pretrial discovery deposition of either an adverse party or a witness could not be taken at the time this statute was enacted. In *Victor Products Corp. v. Edwards,* 172 Wash. 1, 8, 18 P. (2d) 1045 (1933), and *Kenworthy v. Kleinberg,* 182 Wash. 425, 430, 47 P. (2d) 825 (1935), we recognized that a later rule of court (Rule 8, Rules of Pleading, Procedure and Practice, 159 Wash. lxii; Rem. Rev. Stat., § 308-8) permitted taking a pretrial discovery deposition of an *opposing party.* However, we held that the statute did not authorize taxing, as costs, expenses incurred by a party taking such a deposition for the purpose of preparing for the trial of the pending action, nor in ascertaining his rights for his own benefit.

We know of no reason why the same rule should not apply when a pretrial discovery deposition is taken of a *witness* as provided by Rule 26, Rules of Pleading, Practice and Procedure, 34A Wn. (2d) 84, as amended, effective January 2, 1953. The item of costs, of which complaint is made, is ordered stricken from the cost bill in the trial court.

The judgment of the trial court dismissing plaintiff's complaint with prejudice is reversed, and the case remanded with instructions to make findings of fact, not inconsistent with this opinion, upon the issues presented by the pleadings and evidence.

Costs on this appeal shall abide the final disposition of this action.

GRADY, C. J., SCHWELLENBACH, HILL, and DONWORTH, JJ., concur.

February 16, 1955. Petition for rehearing denied.