[No. 36755. Department Two. March 5, 1964.]

CARL A. OLSON *et al.*, *Respondents*, v. ALBERT S. BALCH *et al.*, *Appellants.**

*Reported in 389 P. (2d) 900.

*Burkheimer, Cavender, Wyman & Curtis* and *Robert L. Butler,* for appellants.

*Karr, Tuttle, Campbell, Koch & Granberg,* for respondents.

DONWORTH, J.—This is an appeal from a judgment entered after granting respondents' motion for summary judgment. The judgment decreed that appellants had no interest in certain described real property, declared null and void an exchange contract dated April 18, 1959, and awarded respondents their costs.

Respondents and Park Highlands Development Company, a limited partnership, purported to enter an exchange contract dated April 18, 1959, whereby respondents agreed to sell and convey to Park Highlands Development Company approximately 50 acres of land situated in Snohomish County (specifically described therein), and respondents were to receive in exchange real property which they were to select and which was to be purchased by appellants. Albert S. Balch owns all (except two qualifying shares) the stock of Wildwood Estates, a corporation which is a general partner of Park Highlands Development Company. Appellant Balch, in the exchange contract, personally guaranteed the obligations of the limited partnership therein, besides acting as its agent in negotiation of the exchange contract.[1]

The exchange contract was drafted by respondent husband and appellant Balch by making changes and filling in blanks in a printed form designated as Washington Title Insurance Form L 41. Its provisions are too lengthy to be quoted verbatim. Generally speaking, it provided that respondents' 50 acres were valued at $90,287.50 for pur-

---

[1] While both Albert S. Balch and Edith B. Balch, his wife, are, together with Park Highlands Development Company, appellants herein, reference will be made only to Mr Balch (and not to his wife) since he conducted the negotiations involved in this case.

poses of the exchange agreement. It is then provided that this exchange shall be made in part from time to time "as provided by trusteeship" which is to be drawn by respondents' attorney (not named).

The property to be exchanged for respondents' property which appellants agree to purchase and convey to respondents is described in the exchange contract as

"  .  .  .   the following real estate situate in ———— County, Washington, to-wit:

"Property to be acquired by first party under a trusteeship to be worded by attorney for second party, said property to be selected by second party, funds for such trusteeship to be delivered to trustee by first party $30,000 cash, and the balance in three equal annual payments, provided that in the event first party makes such payments in advance of due date the trustee will discount such payments at the rate of 3% per annum

"subject to the following incumbrances: none, or as accepted by second party.

"This is an agreement and may at the request of the first or second party be rewritten in whole or in part by attorney for the second party in order to protect the interests of the first and second parties in every way, provided that the main intent of the agreement must be preserved."

The exchange contract also provides that the parties agree to furnish purchaser's policies of title insurance within 10 days from April 18, 1959:

"5. The parties agree within ten days from the date hereof to procure from Washington Title Insurance Company purchaser's policies of title insurance, insuring the full amounts of the contract valuations, against loss or damage by reason of defect of the titles to said described premises, or by reason of prior liens not assumed under this contract."

October 25, 1961, respondents instituted this action alleging that the purported exchange contract was ambiguous, incomplete, and unenforceable, and that no performance thereof had been tendered or consummated on appellants' part.

Appellants, in addition to denying the material allegations of the complaint, affirmatively alleged that they had de-

posited in an escrow account with the Washington Title Insurance Company a check for $30,000, and requested respondents to select property to be conveyed to them under the exchange agreement, but that respondents had failed to perform their obligations thereunder.

At the trial, respondents moved for a summary judgment in their favor, and the court, after a consideration of the record, including the affidavit of one of respondents' counsel and the affidavit of appellant Balch, granted the motion.

The trial court then entered judgment quieting respondents' title to the 50 acres they owned in Snohomish County as against any claim of appellants and declaring the exchange agreement to be null and void.

As the basis of their appeal therefrom, appellants rely on three assignments of error:

"1. The trial court erred in granting respondents' motion for summary judgment and holding that the Exchange Contract entered into by the parties was ambiguous, incomplete and unenforceable as a matter of law.

"2. The trial court erred in entering the Finding of Fact designated as Conclusion of Law I.

"3. The trial court erred in entering Judgment for respondents (plaintiffs) according to the prayer of their complaint, including their costs and disbursements.

> "Verbatim Portions of Findings of Fact Which Appellants Claim to Be Erroneous
> "Finding of Fact designated as Conclusion of Law I:
> " 'That the said purported Exchange Contract is ambiguous, incomplete and unenforceable.' "

In support of their argument that the trial court erred in granting respondents' motion for summary judgment and in holding that the exchange agreement was ambiguous, incomplete, and unenforceable as a matter of law, appellants refer to Rule of Pleading, Practice and Procedure 56 (RCW Vol. 0), relating to summary judgments and to numerous recent decisions of this court in which the rule is discussed. They correctly state that the fundamental question to be resolved is whether the record presents a genuine issue as to any material fact.

The answer to this question in the present case depends on whether the exchange agreement is so ambiguous and incomplete that it is unenforceable by a court as a matter of law.

In considering this question, we have in mind the principles enunciated by other courts of last resort in the decisions referred to in appellants' brief that, in construing an indefinite agreement, a court should endeavor, if possible, to find a sufficiently definite meaning to the bargain made by the parties to carry out their intent and "not favor, but lean against, the destruction of contracts because of uncertainty." In *Platts v. Arney*, 46 Wn. (2d) 122, 126, 278 P. (2d) 657 (1955), this court said:

"Courts do not lightly declare a contract void for lack of certainty, but will endeavor to discover the true meaning and intent of the parties. . . ."

With these precepts in mind, we now consider the provisions of the exchange agreement for the purpose of deciding whether they are sufficiently definite to be enforceable by a court.

As will be seen from the portions of the exchange agreement hereinbefore quoted, there are several material items that are either omitted entirely or stated so indefinitely that the agreement is ambiguous and incomplete. We have endeavored to interpret the document so as to arrive at a clear intent of the parties, but have been unable to do so.

As we read the purported contract, generally, respondents agreed to convey to appellants approximately 50 acres of land in Snohomish County (a description of the property being attached to the document) at a value, established for the purposes of the agreement, of $90,287.50. In exchange, appellants agreed to convey to respondents property purchased with funds paid by appellants to a trusteeship (to be established and no trustee being designated) as follows: $30,000 in cash on or before June 17, 1959, and the balance in three equal annual payments, provided appellant Balch " . . . sign any earnest money requested by the trusteeship in the amount of $30,000

. . . ." during the 60-day period, from April 18 to June 17, 1959. Respondents agreed to pay contract balances owing on their land (amounting to less than $20,000) on or before conveying to appellants. These funds paid to the trusteeship were to be used to purchase property selected by respondents anywhere in the state of Washington. The property is described no more than as that to be selected by respondents, and there is no indication as to the terms of the trusteeship which was to be worded in the future by an unnamed attorney of respondents. The parties further agreed to procure purchaser's policies of title insurance within 10 days of April 18, 1959.

As will be noted from a portion of the exchange contract quoted above, it is stated therein that the agreement may, at the request of either party, be rewritten "in whole or in part" by respondents' attorney (no attorney designated) so as to protect the interests of both parties in every way, provided that the main intent is preserved.

In our opinion, this last provision alone makes the exchange contract ambiguous and incomplete, and hence unenforceable as a matter of law. It is a contract wherein either party may request changes *in whole or in part*, so long as the main intent is preserved. Thus, all terms of the contract, except the ultimate exchange of land, are subject to change and all promises are illusory and unenforceable. *Spooner v. Reserve Life Ins. Co.*, 47 Wn. (2d) 454, 458, 287 P. (2d) 735 (1955), and cases cited.

The exchange contract, as described above, presents problems similar to those found in *Hubbell v. Ward*, 40 Wn. (2d) 779, 246 P. (2d) 468 (1952), and *Keys v. Klitten*, 21 Wn. (2d) 504, 151 P. (2d) 989 (1944). The exchange contract is at most a contract to make a contract, because so many of the intended terms are either left to future determination or are subject to change at the request of either party.

In *Platts v. Arney, supra,* we distinguished the above-cited cases on the ground that the parties in *Platts* had executed and delivered all the documents contemplated by

the original agreement, which was thereby rendered definite and certain.

We are of the opinion that neither party to the exchange contract has performed any acts which would bring the present case within the reasoning of the *Platts* case. Appellants' only action that could be interpreted as performance in accordance with the purported contract is the depositing of a $30,000 check with an escrow.

The affidavit of one of respondents' counsel in support of their motion for summary judgment has attached to it a copy of escrow instructions dated June 16, 1959, which were delivered to Washington Title Insurance Company by appellants, and read, in part, as follows:

"I will hand you—$30,000.00 cash deposited this date which will be replaced by check from Fidelity Savings & Loan Association. . . ,"

It is stated in the affidavit of appellant Balch that a $30,000 check accompanied the escrow instructions. The exchange contract calls for payment to the trusteeship, not yet established, of "$30,000 cash" on or before June 17, 1959, and not for the deposit of a $30,000 check with an escrow. Further, time was expressly stated to be of the essence; therefore, we are unable to say that any of the terms of the exchange contract would be made definite and certain by any action of the parties, as was done in *Platts.*

In their brief, appellants state:

"This Exchange Contract is ambiguous, it lacks clarity in many respects, but it is not unintelligible. It is not too ambiguous for satisfactory interpretation and enforcement."

For the reasons stated herein, we are unable to agree with appellants' last sentence in the above quotation.

After attempting to interpret the exchange agreement in accordance with the rules of interpretation laid down in several cases cited by appellants, we find ourselves unable to reach the conclusion that it is sufficiently intelligible to be legally enforceable.

Nor can we find in the record any genuine issue as to

any material fact because the exchange agreement is ambiguous, incomplete and unenforceable as a matter of law.

Hence we must affirm the trial court in granting respondents' motion for summary judgment and in entering its judgment for respondents in accordance with the prayer of their complaint.

It is so ordered.

OTT, C. J., WEAVER, HAMILTON, and HALE, JJ., concur..