[No. 42664. En Banc October 25, 1973.]

WILLARD CHASE, *Petitioner*, v. THE DAILY RECORD, INC., *Respondent*.

---

*Justice Ryan is serving as a justice pro tempore of the Supreme Court pursuant to Const. art. 4, § 2(a) (amendment 38).

38

*J. P. Tonkoff* (of *Tonkoff, Dauber & Shaw*), for petitioner.

*Alan A. McDonald* (of *Halverson, Applegate, McDonald, Bond, Grahn, Wiehl & Almon*), for respondent.

FINLEY, J.—This action concerns an order of the Kittitas County Superior Court granting a motion of the defendant/respondent newspaper, The Daily Record, for summary judgment dismissing a libel action instituted by the plaintiff/appellant, Willard Chase.

The facts of the instant case are as follows: In the spring of 1971, the appellant, Willard Chase, was a commissioner for the Kittitas County Port District. Pursuant to a state audit of the port district, Chase was requested to make "repayment" of certain sums to the port district upon the basis that he had allegedly received reimbursement from the port district for a trip which he was supposed to make, but one which he did not actually take to Washington, D.C. The record shows that a commissioner of the local public utility district took the trip instead of appellant Commissioner Chase of the Kittitas Port District. On April 9, 1971, after learning that a newspaper in Kittitas County intended to publish a news story relating to this "repayment," Chase contacted the owner-publisher of the paper and requested that he be permitted to have a statement published. Chase was advised at that point to contact the newspaper office the following morning. On April 10, 1971, Chase telephoned the editor of the newspaper and read a prepared statement.[1] That same day, the newspaper ran a news arti-

---

[1] Appellant purportedly read the following statement to the newspaper:

" 'Dedicated to Community Service' has been my slogan during the 40 years that I have been in the newspaper business. Under this banner

cle on the "repayment" issue, publishing in part the statement of Chase, but omitting the assertion by Chase that he had actually received no public funds as reimbursement for the trip that he did not take.[2] This omission constitutes the

I have learned to accept criticism and abuses as one of the hazards. This has been true in my position as an unsalaried Port Commissioner. However, I and other Port officials feel that there is [s]omething unfair about a law that permits the leving [sic] of heavy fines, under the threat of being sued, without a hearing.

"More than one attorney and auditor have wondered why I was asked to repay the expenses of a trip to Washington which I did not take, and for which there was no money paid to me. Legal counsel that I have received advises that a fine levied against me in connection with the recent port audit, could be reversed in court; but, the cost to me would no doubt be many times the fine, plus lengthy time away from my business.

"My concern for continuation of and harmony in the Port led me to swallow some pride, save some money and pay the fine. My checks were submitted and accepted with the following comment:

"'I am not admitting to any wrong doing. Since there is no means of appeal other than an expensive court trial, for which I have neither the time or money, there is no other choice. It is my understanding that this closes the case as far as I am personally concerned in the matter of legal action and further damaging publicity.' "

[2]The newspaper actually published the following story: "Port repayment made

"State Attorney General's office in Olympia Friday said re-payments and penalties have been made to the Port District by two Kittitas County Port officials.

"A spokesman at the office said resigned Commissioner Phil Kern had made a payment of $994.93 and Commissioner Willard Chase payments of $551.69 and $19.43. All payments were made to the County Port District and were termed as 'repayment and penalty', relative to the recent audit of the Port. They said the action was 'completed.'

"The spokesmen declined to make any statement regarding commissioner Pat Mundy and Port Manager Robert (Buck) Buchanan. Cases are pending against the two men in Superior Court.

"Buchanan did state Thursday at a port meeting that he had been fined more than $4,000 for his work promoting the Ellensburg Rodeo as a result of the state audit.

"Chase said, 'Legal council that I have received advises a penalty against me in connection with the audit could be reversed in court, but the cost to me would no doubt be many times the penalty plus lengthy time away from my business. My concern for continuation of, and harmony in the Port led me to swallow some pride, save some

basis for the immediate libel action. After reviewing various pretrial affidavits, depositions, interrogatories, and exhibits, including the news article itself, the trial court granted a motion by the respondent newspaper for summary judgment. In support of this order, the court observed that Chase had failed to present evidence sufficient to demonstrate the existence of any issue of fact relating to the necessary material element for a libel action which concerns a public official in a matter of public interest, to wit: *actual malice*. This ruling of the trial court was affirmed by the Court of Appeals.

■ In reviewing the preceding judgments in this case, we are mindful of the pertinent modification to the law of libel established by the United States Supreme Court in *New York Times Co. v. Sullivan*, 376 U.S. 254, 11 L. Ed. 2d 686, 84 S. Ct. 710, 95 A.L.R.2d 1412 (1964), as that relates to "public officials." In delineating the protection accorded speech and press by the First Amendment, the court prefaced its ruling in *New York Times* with the following observation:

> [W]e consider this case against the background of a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials. *See Terminiello v. Chicago*, 337 U. S. 1, 4; *De Jonge v. Oregon*, 299 U. S. 353, 365.

---

money and pay the penalty.

" 'My checks were submitted and accepted with the following comment: "I am not admitting to any wrongdoing. Since there is no means for appeal other than an expensive court trial, for which I have neither time nor the money, there is no other choice. It is my understanding that this closes the case as far as I am personally concerned in the matter of legal action and further damaging publicity." '

"The larger amount was for a Port trip he did not take to Washington D.C. in pursuit of a grant for a steam plant and smaller amount for promotion of a motorcycle event in Upper county.

"Kern confirmed the amount and said, 'I bought the color separations (used in making printing plates) from the port.' "

*New York Times Co. v. Sullivan, supra* at 270-71. Upon this basis, the court concluded as follows:

> The constitutional guarantees require, we think, a federal rule that prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with "actual malice"—that is, with knowledge that it was false or with reckless disregard of whether it was false or not.

*New York Times Co. v. Sullivan, supra* at 279-80. *Accord, Rosenbloom v. Metromedia, Inc.*, 403 U.S. 29, 29 L. Ed. 2d 296, 91 S. Ct. 1811 (1971); *Rosenblatt v. Baer*, 383 U.S. 75, 15 L. Ed. 2d 597, 86 S. Ct. 669 (1966); *Garrison v. Louisiana*, 379 U.S. 64, 13 L. Ed. 2d 125, 85 S. Ct. 209 (1964); *Miller v. Argus Publishing Co.*, 79 Wn.2d 816, 490 P.2d 101 (1971); *Grayson v. Curtis Publishing Co.*, 72 Wn.2d 999, 436 P.2d 756 (1967). In *Garrison v. Louisiana, supra* at 74, 79, the court restricted recovery in libel actions instituted by public officials to those cases where false statements are made with a "high degree of awareness of their probable falsity," rejecting an "ordinary care" or "mere negligence" standard. This "reasonable-man standard of liability" was again declined in *Rosenbloom v. Metromedia, Inc., supra* at 50-51. In applying the strict test of knowledge of falseness or reckless disregard of the falseness of an allegedly libelous statement, the court has required that evidence proffered by a plaintiff-public official to show such *actual malice* must do so with "convincing clarity." *New York Times Co. v. Sullivan, supra* at 285-86.

The plaintiff-appellant, Willard Chase, became the subject of the allegedly libelous news article as a result of his public position as port district commissioner; by his own admission, his conduct constituted an "issue of public or general concern." *Rosenbloom v. Metromedia, Inc., supra* at 44. Thus, Chase was a "public official" as defined in *New York Times*, and therefore, at the final or "full-blown" trial stage of the lawsuit, would be required to prove by evidence meeting the standard of "convincing clarity" pre-

scribed by the decisions of the United States Supreme Court (1) that the allegedly defamatory statement concerning his official conduct was, in fact, false, and (2) that this false statement was published with knowledge that it was false or with reckless disregard of whether it was false or not.

Faced at the opening or pretrial stage of the lawsuit with a motion by the respondent newspaper for summary judgment, Chase had the burden of producing or setting forth "specific facts showing there is a genuine issue of material fact for trial." *Plaisted v. Tangen*, 72 Wn.2d 259, 263, 432 P.2d 647 (1967). This requirement was elaborated upon in *Leland v. Frogge*, 71 Wn.2d 197, 200-01, 427 P.2d 724 (1967), as follows:

> The function of a summary judgment is to determine whether there is a genuine issue of material fact requiring a formal trial. *Balise v. Underwood*, 62 Wn.2d 195, 381 P.2d 966 (1963); *Olson v. Balch*, 63 Wn.2d 938, 389 P.2d 900 (1964). The evidence before the judge is that contained in the pleadings, affidavits, admissions and other material properly presented. *State ex rel. Bond v. State*, 62 Wn.2d 487, 383 P.2d 288 (1963); 3 Barron & Holtzoff, Federal Practice and Procedure § 1236. When a pleading or affidavit is properly made and is uncontradicted, it may be taken as true for purposes of passing upon the motion for summary judgment. *Preston v. Duncan*, 55 Wn.2d 678, 349 P.2d 605 (1960); *Henry v. St. Regis Paper Co.*, 55 Wn.2d 148, 346 P.2d 692 (1959). A party may not rest on formal pleadings, but must affirmatively present the factual evidence upon which he relies. *Reed v. Streib*, 65 Wn.2d 700, 399 P.2d 338 (1965); *Meissner v. Simpson Timber Co.*, 69 Wn.2d 949, 421 P.2d 674 (1966).

The Court of Appeals, in considering the instant case, has stated:

> plaintiff had the burden of producing sufficient facts in the summary judgment proceeding to establish a genuine issue of fact which, if believed, could persuade a jury *with convincing clarity* that defendant was guilty of actual malice in failing to insert plaintiff's denial of having received any money in connection with the trip.

(Italics ours.) *Chase v. Daily Record, Inc.*, 8 Wn. App. 1, 4, 503 P.2d 1103 (1972). While we agree with this very basic analytical thesis or structure set out by the Court of Appeals, it seems to us some further analysis and discussion is necessary and may be helpful.

■ As to summary judgment procedure in run-of-the-mill lawsuits, it is well established that the function of the trial court in ruling upon a motion for summary judgment is not to resolve the basic factual issues, with the ultimate finality which is expected and is appropriate at the final or "full-blown" trial stage of a lawsuit. Rather, the trial court's function is to determine whether a genuine issue as to any material fact exists. *Hughes v. Chehalis School Dist. 302*, 61 Wn.2d 222, 377 P.2d 642 (1963); *Jolly v. Fossum*, 59 Wn.2d 20, 365 P.2d 780 (1961); Trautman, *Motions for Summary Judgment: Their Use and Effect in Washington*, 45 Wash. L. Rev. 1 (1970). In defamation actions by public officials, although the summary judgment procedure is basically the same, we are convinced the decisions of the United States Supreme Court have added a new facet, measurement, or dimension which must now be considered and resolved by the trial courts. In other words, in such defamation actions, if the trial judge at the summary judgment stage determines that the plaintiff has offered evidence of *a sufficient quantum to establish a prima facie case,* and the offered evidence *can be equated with the standard or test of "convincing clarity"* prescribed by United States Supreme Court decisions, the motion for summary judgment should be denied.[3] *Accord, United Medical Labs., Inc. v.*

---

[3]In *Tait v. KING Broadcasting Co.*, 1 Wn. App. 250, 255, 460 P.2d 307 (1969), the Court of Appeals indicated that at the summary judgment stage decisions of the United States Supreme Court required "*substantial* evidence . . . which, if believed, could persuade a jury with convincing clarity . . ." (Italics ours.) We cannot wholly agree with this. Briefly stated: we think the interposition of the term *substantial* in the Tait case is not required by the decisions of the United States Supreme Court. We think interposition of the term *substantial* could possibly, and unnecessarily, alter the degree or standard of proof involved. Furthermore, we think that simply requiring a degree or a

*Columbia Broadcasting Sys., Inc.,* 404 F.2d 706 (9th Cir. 1968), *cert. denied,* 394 U.S. 921, 22 L. Ed. 2d 454, 89 S. Ct. 1197 (1969).

Adverting now to the factual proof presented to the trial court in the instant case: the defendant Daily Record published a news article about the plaintiff, including these statements: "All payments were made to the county port district and were termed as 'repayment and penalty' . . . [t]he larger amount was for a port trip he did not take to Washington, D.C." This clearly implies that the plaintiff made a *repayment* for the cost of a trip he did not take. Repayment is defined as the act of paying back. *Webster's Third New International Dictionary* (1971). In other words, the full import of the article was that plaintiff received money, *i.e.,* public funds under the false pretense of having incurred expenses for a trip he, in fact, had never made. Further, when that was discovered, plaintiff made a repayment.

The article, taken as a whole, leaves the reader with the clear implication of defalcation of public port monies by a public official. It was *not* true that plaintiff personally received this expense money. To state that he was repaying something he had never received was false.

Defendant knew it was false. In the statement made to defendant's managing editor, prior to publication, plaintiff asserted that he had never received any money. He asserted that he emphasized that point more than once in giving his statement to the managing editor.

Plaintiff offered proof, for whatever its significance, that at a local coffee club, described as composed of local prominent people, and after the article appeared, it was said: "Well it looks like everyone had their finger in the till. I only know what I read in the newspaper."

---

standard of "convincing clarity" in itself imposes the required level or quantum of proof without the further possibility of additionally burdening the plaintiff with an evidentiary standard of proof equated with the term *substantial.*

It was error for the trial court to find that there was *no evidence* that the article was false or printed with knowledge of its falsity. As the above analysis demonstrates, use of the word "repayment" carries a possible implication of an improper receipt and use of public funds and subsequent repayment. Prior to publication a statement which plaintiff allegedly read to the defendant indicated that such an implication was untrue and false.

In our judgment the plaintiff made out a *prima facie* case and his proof was of *convincing clarity*. He was entitled to have the issues of defamation, actual malice, and damages determined by the trier of facts. The judgment of the trial court and the Court of Appeals is reversed and the case is remanded for trial.

HALE, C.J., and HUNTER, HAMILTON, STAFFORD, WRIGHT, UTTER, and BRACHTENBACH, JJ., concur.

ROSELLINI, J. (concurring in part; dissenting in part)—I concur with the majority that at the summary judgment stage of a libel action, the plaintiff has to offer evidence of sufficient quantum to establish a prima facie case, and that the offered evidence can be equated with the standard or test of "convincing clarity" to successfully resist a summary judgment. I dissent to the majority finding that the plaintiff has met this test. The majority admits that the claim for relief for the libel action which concerns a public official in a matter of public interest is actual malice. I am unable to find any offered evidence of malice—that is, any statement made with knowledge that it was false or with reckless disregard of whether it was false or not.

The record on file which is pertinent consists of an affidavit of James J. McGiffin, owner and publisher of The Daily Record, Inc., and John Ludtka, managing editor of The Daily Record. Both state that the article as published on April 10, 1971, was true and not published with malice toward any individuals therein named including Commissioner Willard Chase. The affidavits are consistent with the

previous answer filed by the defendant. These sworn statements denying malice and alleging the truth of the referenced article are not controverted at any point in the record by plaintiff other than by plaintiff's conclusionary statement contained in the original complaint and in the subsequent affidavit. At no time does plaintiff support his conclusionary statement with an itemization of facts necessary to avoid a summary judgment. The court rejected such a method of avoiding summary judgment in the decision of *Brown v. Child,* 3 Wn. App. 342, 474 P.2d 908 (1970), in pertinent part at page 342:

> In answer to defendants' motion, plaintiffs merely reiterated defendants' supposed violation of the Securities Act of Washington without any supporting facts. Such an unsupported conclusional statement cannot be considered by a court in a motion for summary judgment. *Peninsula Truck Lines, Inc. v. Tooker,* 63 Wn.2d 724, 388 P.2d 958 (1964); *Henry v. St. Regis Paper Co.,* 55 Wn.2d 148, 346 P.2d 692 (1959).
>
> . . .
>
> A motion for summary judgment is properly granted if there is no genuine issue of fact as to any material element necessary to support a claimed cause of action. *Clarkston Community Corp. v. Asotin County Port Dist.,* 3 Wn. App. 1, 472 P.2d 558 (1970) and *Felsman v. Kessler,* 2 Wn. App. 493, 468 P.2d 691 (1970). See also Trautman, *Motions for Summary Judgment: Their Use and Effect in Washington,* 45 Wash. L. Rev. 1 (1970).
>
> After considering the affidavits and depositions offered by both sides, we find no error in the trial court's decision.

The plaintiff in fact admitted during his deposition that the article as published was truthful, his only grievance being that it left out a portion of his own self-serving statement. Plaintiff candidly admitted the truth of the article on a factual basis from the Attorney General's demand as outlined in the article during his deposition. Plaintiff additionally had no hesitation in admitting the responsibility of defendant to print the article. Plaintiff further admits to circumstances wherein he read his self-serving statement

to editor Ludtka over the telephone and did not in fact require Ludtka to read back to him the portion with which he was apparently so concerned.

The plaintiff's only effort to establish malice was the defendant's position that the publisher previously evidenced dissatisfaction with the operation and management of the port district and had urged the plaintiff to resign. The plaintiff, in the affidavit, readily admits that the position of the defendant opposing his occupancy of the office of port commissioner is entirely justifiable on philosophical basis without resort to any assumption of malice. The majority finds that the use of the word "repayment" clearly implies an improper receipt and use of public funds and subsequent repayment, and that it was a false statement. The majority does not discuss what evidence of convincing clarity in regard to malice, or a reckless disregard of whether it was false or not, was shown.

The gravamen of a libel action in regard to a public official is not that it is a false statement, but that it must be made with malice or reckless disregard of whether it was false or not. *New York Times Co. v. Sullivan*, 376 U.S. 254, 11 L. Ed. 2d 686, 84 S. Ct. 710, 95 A.L.R.2d 1412 (1964).

> [E]rroneous statement is inevitable in free debate, and
> . . . it must be protected if the freedoms of expression are to have the "breathing space" that they "need
> . . . to survive," . . .

*New York Times Co. v. Sullivan, supra* at 271-72.

> Injury to official reputation affords no more warrant for repressing speech that would otherwise be free than does factual error.

*New York Times Co. v. Sullivan, supra* at 272.

> A rule compelling the critic of official conduct to guarantee the truth of all his factual assertions—and to do so on pain of libel judgments virtually unlimited in amount—leads to a comparable "self-censorship." Allowance of the defense of truth, with the burden of proving it on the defendant, does not mean that only false speech will be deterred. Even courts accepting this defense as an ade-

quate safeguard have recognized the difficulties of adducing legal proofs that the alleged libel was true in all its factual particulars. See, *e.g., Post Publishing Co.* v. *Hallam*, 59 F. 530, 540 (C. A. 6th Cir. 1893); see also Noel, Defamation of Public Officers and Candidates, 49 Col. L. Rev. 875, 892 (1949). Under such a rule, would-be critics of official conduct may be deterred from voicing their criticism, even though it is believed to be true and even though it is in fact true, because of doubt whether it can be proved in court or fear of the expense of having to do so. They tend to make only statements which "steer far wider of the unlawful zone." *Speiser* v. *Randall, supra*, 357 U.S. [513] at 526 [2 L. Ed. 2d 1460, 78 S. Ct. 1332 (1958)]. The rule thus dampens the vigor and limits the variety of public debate. It is inconsistent with the First and Fourteenth Amendments.

The constitutional guarantees require, we think, a federal rule that prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with "actual malice"—that is, with knowledge that it was false or with reckless disregard of whether it was false or not.

(Footnote omitted.) 376 U.S. at 279-80.

I find that the plaintiff has failed to present any evidence supportive of showing malice upon 'the part of the defendant. No evidence was offered to show that the article as it appeared in print was false and published with any knowledge of falsity or any reckless disregard of any falseness.

I would affirm the trial court and the Court of Appeals.

Petition for rehearing denied December 12, 1973.