578 S.E.2d 361

Gerald L. CHAFIN; Elmer Ray Spence; Earl Spence; and James Earl Spence, Plaintiffs Below, Appellants

v.

W.R. GIBSON, Individually and in His Capacity as a Member of the West Virginia Division of Public Safety, Defendant Below, Appellee

No. 30620.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 14, 2003.

Decided Feb. 27, 2003.

Michael C. Allen, Allen & Allen, Charleston, West Virginia, Attorney for the Appellants.

Ancil G. Ramey, Michelle E. Piziak, Steptoe & Johnson, Charleston, West Virginia, Attorney for the Appellees.

PER CURIAM:

This is an appeal by Gerald Chafin, Elmer Spence, Earl Spence, and James Spence (hereinafter "Appellants") from a decision of the Circuit Court of Mingo County granting summary judgment to Sergeant W.R. Gibson (hereinafter "Appellee"), individually and as a member of the West Virginia Division of Public Safety. The Appellants contend that the lower court erred in granting summary judgment on this defamation action where the Appellee had indicated during a press interview that the Appellants were possible suspects in a hit and run automobile accident. The Appellants claim that the Appellee lacked objective support for that statement and that the lower court erred in granting summary judgment for the Appellee. Upon a review of the arguments, the record, and pertinent authorities, we conclude that the lower court correctly granted summary judgment. Accordingly, we affirm the decision of the lower court.

I. Factual and Procedural History

On December 12, 1991, Mr. Shelby Hall was struck and killed in a hit and run automobile accident in Mingo County, West Virginia. The driver of the motor vehicle was never located. During the ensuing investigation, evidence was discovered which led state investigators to believe that local law enforcement personnel may have been involved in an effort to conceal the identity of the driver of the hit and run vehicle. Newspaper articles appearing in the Williamson Daily News in June 1995 indicated that the Appellee, as a member of the West Virginia Division of Public Safety, had supplied information leading to printed comments that the Appellants were suspects in the investigation of the hit and run incident. Specifically, according to the Appellee's deposition testimony, he had stated that "anyone at the scene" was a "possible suspect" in an alleged cover-up concerning the hit and run accident. Although the Appellee did not specifically name any of the Appellants, a reporter[1] gained access to information regarding the individuals present at the scene and learned that the Appellants were present at the incident.[2]

Based upon the information disseminated through the newspaper articles, the Appellants filed a civil action against the Appellee for defamation in June 1996.[3] Subsequent to substantial discovery, the lower court granted summary judgment for the Appellee. The lower court found that truth was an absolute defense and that the Appellants were indeed suspects, regardless of whether there was

---

1. The reporter was not deposed, and no affidavit from the reporter was offered.

2. Appellant Earl Spence was a former Delbarton, West Virginia, police chief. Appellant James Earl (Jimmy) Spence was Earl Spence's son and a former Delbarton police officer. James Earl Spence was indicted by a federal grand jury after an investigation of the underlying hit and run and was thereafter acquitted. Appellant Gerald Chafin was the Sheriff of Mingo County. Appellant Elmer Spence was Earl Spence's brother and the mayor of Delbarton. Elmer Spence was also serving as a paramedic at the scene of the accident.

3. The Appellants also asserted claims for false light invasion of privacy and intentional infliction of emotional distress. The lower court properly ruled that these claims were encompassed within the defamation claims, and all claims were dealt with simultaneously in the summary judgment resolution.

any objective basis for the theory. The lower court also found that the Appellee had a qualified privilege to provide information to the press. The Appellants have appealed to this Court.

## II.  Standard of Review

■■ This Court applies a plenary review to an order of a circuit court deciding a summary judgment motion. As we stated in syllabus point one of *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994), "[a] circuit court's entry of summary judgment is reviewed *de novo.*" We have emphasized that "[t]he function of summary judgment is 'to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required.'" *Powderidge Unit Owners Ass'n v. Highland Props., Ltd.,* 196 W.Va. 692, 697, 474 S.E.2d 872, 877 (1996) (quoting *Hanlon v. Chambers,* 195 W.Va. 99, 106, 464 S.E.2d 741, 748 (1995)). Consequently, we have consistently held that " '[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law.' Syllabus Point 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York,* 148 W.Va. 160, 133 S.E.2d 770 (1963)." Syl. Pt. 1, *Andrick v. Town of Buckhannon,* 187 W.Va. 706, 421 S.E.2d 247 (1992).

■■ West Virginia Rule of Civil Procedure 56(c) succinctly states that summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." W. Va. R. Civ. P. 56(c). This Court has defined a "genuine issue" as follows in syllabus point five of *Jividen v. Law,* 194 W.Va. 705, 461 S.E.2d 451 (1995):

> Roughly stated, a "genuine issue" for purposes of West Virginia Rule of Civil Procedure 56(c) is simply one half of a trialworthy issue, and a genuine issue does not arise unless there is sufficient evidence favoring the non-moving party for a reasonable jury to return a verdict for that party. The opposing half of a trialworthy issue is present where the non-moving party can point to one or more disputed 'material' facts. A material fact is one that has

the capacity to sway the outcome of the litigation under the applicable law.

The nonmoving party, in order to defeat a motion for summary judgment, must show that there will be sufficient competent evidence available at trial to warrant a finding favorable to the nonmoving party. *Williams v. Precision Coil, Inc.,* 194 W.Va. 52, 60–61, 459 S.E.2d 329, 337–38 (1995). In *Gooch v. West Virginia Dept. of Public Safety,* 195 W.Va. 357, 465 S.E.2d 628 (1995), this Court explained that "[t]o meet its burden, the nonmoving party must offer 'more than a mere "scintilla of evidence" and must produce evidence sufficient for a reasonable jury to find in a non-moving party's favor." *Id.* at 365, 465 S.E.2d at 636, quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202. Rule 56(e) of the West Virginia Rules of Civil Procedure clarifies this concept, as follows:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

W. Va. R. Civ. P. 56(e).

## III.  Discussion

■■ We initiate our evaluation with the recognition that the Appellants herein must be categorized as "public officials" for purposes of a defamation claim analysis. As explained above, the Appellants were all public officials in Mingo County, West Virginia. As this Court observed in *Pritt v. Republican Nat'l Committee,* 210 W.Va. 446, 557 S.E.2d 853 (2001), *cert. denied,* 537 U.S. 812, 123 S.Ct. 71, 154 L.Ed.2d 14 (2002), such a case must proceed as directed by this Court in syllabus point one of *Sprouse v. Clay Communication, Inc.,* 158 W.Va. 427, 211 S.E.2d 674 (1975), *cert. denied,* 423 U.S. 882, 96 S.Ct. 145, 46 L.Ed.2d 107:

> A candidate for political office is governed by the same rules with regard to recovery for libel as a public official and

can sustain an action for libel only if he can prove that: (1) the alleged libelous statements were false or misleading; (2) the statements tended to defame the plaintiff and reflect shame, contumely, and disgrace upon him; (3) the statements were published with knowledge at the time of publication that they were false or misleading or were published with a reckless and willful disregard of truth; and, (4) the publisher intended to injure the plaintiff through the knowing or reckless publication of the alleged libelous material.

Such recognition was also made in syllabus point one of *Hinerman v. Daily Gazette Co., Inc.*, 188 W.Va. 157, 423 S.E.2d 560 (1992), *cert. denied*, 507 U.S. 960, 113 S.Ct. 1384, 122 L.Ed.2d 759 (1993),[4] as follows:

> In order for a public official or a candidate for public office to recover in a libel action, the plaintiff must prove that: (1) there was the publication of a defamatory statement of fact or a statement in the form of an opinion that implied the allegation of undisclosed defamatory facts as the basis for the opinion; (2) the stated or implied facts were false; and, (3) the person who uttered the defamatory statement either knew the statement was false or *knew* that he was publishing the statement in reckless disregard of whether the statement was false.

"Thus, to sustain a cause of action for defamation, a public official, after establishing the existence of an allegedly defamatory statement, must prove that the statement was (1) false and (2) published with actual malice[.]" *Pritt*, 210 W.Va. at 454, 557 S.E.2d at 861. This approach was developed and utilized by the United States Supreme Court in *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). The *New York Times* model has become the standard

for this Court's evaluation of claims of defamation by public officials.

■■■ Our Court has specified the manner in which the issue of falsity must be approached. In syllabus point four of *State ex rel. Suriano v. Gaughan*, 198 W.Va. 339, 480 S.E.2d 548 (1996), this Court stated:

> The law of libel takes but one approach to the question of falsity, regardless of the form of the communication. It overlooks minor inaccuracies and concentrates upon substantial truth. Minor inaccuracies do not amount to falsity so long as the substance, the gist, the sting, of the libelous charge be justified. A statement is not considered false unless it would have a different effect on the mind of the reader from that which the pleaded truth would have produced.

■■ Regarding the second element of a public official's claim for defamation, actual malice is present where the statement at issue was made "with knowledge that [the statement] was false or with reckless disregard of whether it was false or not." *New York Times*, 376 U.S. at 280, 84 S.Ct. 710. The concept of "reckless disregard" was defined by the United States Supreme Court in *St. Amant v. Thompson*, 390 U.S. 727, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968), as indicative that "the defendant in fact entertained serious doubts as to the truth of his publication. Publishing with such doubts shows reckless disregard for truth or falsity and demonstrates actual malice." *Id.* at 731, 88 S.Ct. 1323.[5]

In *Suriano*, this Court examined the United States Supreme Court's pronouncements in *New York Times* and noted that in the attempt to demonstrate falsity and actual malice, the public official must prove the existence of those elements by clear and convincing evidence. "Plaintiffs who are

---

4. In *Hinerman*, this Court reasoned that based upon Mr. Hinerman's status as a public official, no recovery whatsoever could have been had unless the jury were convinced by clear and convincing evidence that the defendant acted from actual malice—i.e., that the defendant published false and defamatory material either knowing that it was false or with reckless disregard of whether it was false, and with an intent to injure the plaintiff.

188 W.Va. at 176, 423 S.E.2d at 579.

5. *See Estep v. Brewer*, 192 W.Va. 511, 514 n. 3, 453 S.E.2d 345, 348 n. 3 (1994) (approving jury instruction to the effect that public figure "must show that the libelous or slanderous statements or writings were made with actual malice toward him or with such recklessness as to show a total disregard of the truth").

public officials or public figures must prove by clear and convincing evidence that the defendants made their defamatory statement with knowledge that it was false or with reckless disregard of whether it was false or not." Syl. pt. 2, in part, *Suriano*, 198 W.Va. at 342, 480 S.E.2d at 551.

■ This standard of proof applies with equal force at the summary judgment stage of public official defamation actions wherein "a public official opposing a summary judgment motion must establish his/her *prima facie* case of defamation, and the elements thereof, by clear and convincing evidence." *Pritt*, 210 W.Va. at 455 n. 14, 557 S.E.2d at 862 n. 14. This standard was examined by the United States Supreme Court in *Bose Corp. v. Consumers Union of United States, Inc.*, 466 U.S. 485, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984), wherein the United States Supreme Court explained:

> The question whether the evidence in the record in a defamation case is of the convincing clarity required to strip the utterance of First Amendment protection is not merely a question for the trier of fact. Judges, as expositors of the Constitution, must independently decide whether the evidence in the record is sufficient to cross the constitutional threshold that bars the entry of any judgment that is not supported by clear and convincing proof of "actual malice."

*Id.* at 511, 104 S.Ct. 1949. Similarly, in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), a libel plaintiff public official was required to resist a motion for summary judgment by showing clear and convincing evidence of the defendant's actual malice. In discussing the standard to be applied in evaluating a motion for summary judgment in this context, the United States Supreme Court stated: "Thus, in ruling on a motion for a summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden." 477 U.S. at 254, 106 S.Ct. 2505. The Court reasoned that "where the factual dispute concerns actual malice, clearly a material issue in a *New York Times* case, the appropriate summary judgment question will be whether the evidence in the record could support a reasonable jury finding either that the plaintiff has shown actual malice by clear and convincing evidence or that the plaintiff has not." *Id.* at 255–56, 84 S.Ct. 710. This Court recently explained that the *Anderson* opinion illustrates the existence of a stricter standard of evidence necessary to survive pretrial motions in public official defamation cases, as opposed to other generalized civil actions. *Crain v. Lightner*, 178 W.Va. 765, 769 n. 1, 364 S.E.2d 778, 782 n. 1 (1987).

In *Long v. Egnor*, 176 W.Va. 628, 346 S.E.2d 778 (1986), this Court observed that "courts generally are more inclined to grant motions for summary judgment in defamation actions filed by public officials or public figures." *Id.* at 635, 346 S.E.2d at 785. This Court in *Long* cited the example of *Mark v. Seattle Times*, 96 Wash.2d 473, 635 P.2d 1081 (1981) (en banc), *cert. denied*, 457 U.S. 1124, 102 S.Ct. 2942, 73 L.Ed.2d 1339 (1982), in which the Supreme Court of Washington rationalized its approach to appraising motions for summary judgment in defamation actions filed by public officials as follows:

> "In defamation actions by public officials, although the summary judgment procedure is basically the same, we are convinced the decisions of the United States Supreme Court have added a new facet, . . . which must now be considered and resolved by the trial courts. In other words, in such defamation actions, if the trial judge at the summary judgment stage determines that the plaintiff has offered evidence of *a sufficient quantum to establish a prima facie case, and the offered evidence can be equated with the standard or test of 'convincing clarity'* prescribed by United States Supreme Court decisions, the motion for summary judgment should be denied."

*Mark*, 635 P.2d at 1088, quoting *Chase v. Daily Record, Inc.*, 83 Wash.2d 37, 515 P.2d 154 (1973) (citations and footnote omitted).

Similarly, in *Rye v. Seattle Times Co.*, 37 Wash.App. 45, 678 P.2d 1282 (1984), the Supreme Court of Washington evaluated the standards for summary judgment within the context of the public figure alleging defamation and concluded that the standards are

legitimately premised upon "reasons of public policy predicated on the first amendment to the United States Constitution." *Id.* at 1287. The *Rye* Court approved of the reasoning of *Washington Post Co. v. Keogh,* 365 F.2d 965 (D.C.Cir.1966), *cert. denied,* 385 U.S. 1011, 87 S.Ct. 708, 17 L.Ed.2d 548 (1967). The *Keogh* court explained that "[s]ummary judgment serves important functions which would be left undone if courts too restrictively viewed their power. Chief among these are avoidance of long and expensive litigation productive of nothing, and curbing the danger that the threat of such litigation will be used to harass or to coerce a settlement...." *Keogh,* 365 F.2d at 968.[6]

█ In the present case, we find that the Appellants failed to offer sufficient evidence of actual malice in their response to the Appellee's motion for summary judgment. As explained above, the West Virginia Rules of Civil Procedure, as well as the judicial pronouncements of this Court, unequivocally state that a party opposing a motion for summary judgment may not rest upon mere allegations or denials; rather, through his response by affidavits or otherwise, he must provide specific facts showing that there is a genuine issue for trial. A non-moving party "cannot create a genuine issue of material fact through a mere speculation or the building of one inference upon another." *Beale v. Hardy,* 769 F.2d 213, 214 (4th Cir.1985). It was consequently the Appellants' responsibility to present a genuine issue regarding whether the Appellee made his allegedly defamatory remarks knowing them to be false, or with reckless disregard as to their truthfulness. Our review of the record does not reveal that the Appellants presented such evidence. The Appellants relied upon general allegations that the Appellee's statements were ill-founded and that police regulations did not permit him to make such comments.[7] Such allegations do not, even when construing the evidence in a light most favorable to the Appellants, establish a genuine issue of material fact in this claim for defamation regarding the essential question of whether the statements were made with actual malice.

Consequently, our review of this matter leads this Court to the conclusion that the Appellants failed to establish a prima facie case. Summary judgment was properly granted, and the lower court's judgment is affirmed.[8]

Affirmed.

Judge DAVID M. PANCAKE and Judge JAMES J. ROWE, sitting by temporary assignment.

Justices MAYNARD and McGRAW, deeming themselves disqualified, did not participate in the decision in this case.

---

6. *See Kidder v. Anderson,* 354 So.2d 1306 (La. 1978), *cert denied,* 439 U.S. 829, 99 S.Ct. 105, 58 L.Ed.2d 123; *Adams* v. *Frontier Broadcasting Co.,* 555 P.2d 556 (Wyo.1976).

7. We do not deem it necessary to engage in an exhaustive analysis of the Appellants' allegations concerning the Appellee's violation of police policy, since we affirm the summary judgment on the basis of the absence of the key element of actual malice. However, we do note the Appellants' reliance upon Rule 1.07 of the State Police Policy Manual, allowing officers to name suspects in aid of apprehension and permitting information to be released to the media concerning the status of the investigation. The parties disagree with regard to the extent to which the Appellee's statements in this matter were properly within the realm of the contemplation of the policies regarding appropriate public statements. The issue of whether the Appellee's statements were properly within the scope of those policies, however, is primarily relevant only to the issue of whether the Appellee enjoys qualified immunity. Because we find that the Appellants have failed to present a prima facie case of defamation, we need not grapple with the issue of immunity.

8. We recognize the Appellants' frustration with their inability to challenge in court the language in the newspaper articles at issue, which they believe communicated to citizens in their county at least a connotation of serious misconduct without reason or basis. As this opinion hopefully explains, our law provides the press very substantial protection from litigation, all in the interest of realizing true "freedom of the press," both in theory and in practice. Thus, our decision today should be seen as a concrete application of "freedom of the press" in the ongoing maintenance of a truly free society, notwithstanding the Appellants' understandable frustration.