[No. 7520–2–II. Division Two. July 31, 1986.]

EDWARD LAMON, ET AL, *Appellants,* v. BETTY BUTLER, ET AL, *Respondents.*

*Jack L. Burtch,* for appellants.

*Curtis M. Janhunen* and *Charette, Brown, Edwards, Lewis & Janhunen,* for respondents.

REED, J.—Edward and Lorraine LaMon appeal the summary judgment dismissing their defamation action against The Daily World and its employee, Betty Butler. We affirm.

The LaMons filed an action for defamation on September 24, 1981, based upon the publication of an article on September 25, 1979, by The Daily World, a newspaper of general circulation in Grays Harbor County. The article discussed a Westport city council meeting during which a

number of Westport citizens explored the possibility of community fund–raising to provide a bond to cover a judgment obtained by the LaMons against Westport police chief John Regan. As background information, the article stated that "[t]he original lawsuit filed by the LaMons stemmed from a 1972 incident that resulted in a municipal court assault conviction of Mrs. LaMon." The "original lawsuit" referred to in this article was a federal court action against the police chief and against John Peterson, the complaining witness in an assault prosecution against the LaMons. The federal suit alleged false arrest, malicious prosecution, and a denial of equal protection arising from the chief's failure to provide adequate police protection for the LaMons' business.[1] An earlier suit in superior court for false arrest and malicious prosecution against the same defendants was dismissed, and the dismissal was affirmed on appeal. The claims of false arrest and malicious prosecution derived from an incident at a restaurant then owned by the LaMons which resulted in the assault charges being filed against the LaMons. The Municipal Court dismissed the case against Mr. LaMon and found Mrs. LaMon guilty of misdemeanor assault. Mrs. LaMon appealed that judgment and, on appeal, the Superior Court dismissed the case with prejudice. The record before this court does not reveal the basis for the dismissal, except that it was by stipulation of the parties.

In their complaint for defamation, the LaMons alleged that The Daily World and Betty Butler, the author of the article, had defamed Mrs. LaMon by stating falsely that she had been convicted of assault in municipal court in

---

[1]After a dismissal of the LaMons' suit by the Federal District Court and a reversal and remand by the Ninth Circuit, the Federal District Court found that the police chief had denied the LaMons equal police protection and awarded them $25,000 in damages and $2,500 in attorney's fees. According to the September 25 article, the "original lawsuit" had been filed "on a single day when the city's liability insurance coverage for Regan had lapsed on one policy and had not been picked up on another. Thus, the city has paid Regan's attorney costs in the numerous appeals of the case since 1974." At the time the article was published, Regan was appealing the judgment to the Ninth Circuit.

1972. The article made no reference to the fact that her assault conviction had been dismissed on appeal. In her affidavit, Mrs. LaMon states that Butler had the superior court order read to her over the telephone and that therefore she knew that the assault action had been dismissed with prejudice. Butler, however, states in her deposition that, although she knew the contents of the order of dismissal, she did not understand that the effect of the order was to void the conviction.

On December 1, 1983, Mr. LaMon filed an affidavit of prejudice against Judge Schumacher and Mrs. LaMon filed an affidavit of prejudice against Judge Kirkwood. Judge Schumacher and Judge Kirkwood were then the only superior court judges in Grays Harbor County. Judge Kirkwood did not disqualify himself. On that same day he issued his memorandum decision granting the defendants' motion for summary judgment.

■ A defamation plaintiff must show four essential elements: a defamatory and false statement, an unprivileged communication, fault, and damages. *Bender v. Seattle,* 99 Wn.2d 582, 599, 664 P.2d 492ʹ (1983); *Sims v. KIRO, Inc.,* 20 Wn. App. 229, 233, 580 P.2d 642, *review denied,* 91 Wn.2d 1007 (1978), *cert. denied,* 441 U.S. 945, 60 L. Ed. 2d 1047, 99 S. Ct. 2164 (1979); Restatement (Second) of Torts § 558 (1977). A defamation plaintiff resisting a *media* defendant's motion for summary judgment must establish a prima facie case by evidence of convincing clarity.[2] *See*

---

[2]In *Dunlap v. Wayne,* 105 Wn.2d 529, 716 P.2d 842 (1986), the court noted Justice Rehnquist's suggestion in *Calder v. Jones,* 465 U.S. 783, 79 L. Ed. 2d 804, 813, 104 S. Ct. 1482 (1984) that the Court recognizes no special rules protecting defamation defendants in summary judgment actions. The court also noted that the Supreme Court was currently considering this very issue in *Anderson v. Liberty Lobby, Inc.,* ___ U.S. ___, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986), but stated that "[i]n any event, the Washington Constitution may provide heightened protection to media defendants. Const. art. 1, § 5; *see State v. Coe,* 101 Wn.2d 364, 679 P.2d 353 (1984)." *Dunlap v. Wayne,* 105 Wn.2d at 534 n.1.

The United States Supreme Court recently handed down its decision in *Anderson v. Liberty Lobby, Inc., supra,* in which it held that the evidentiary standard on summary judgment is governed by the substantive evidentiary standard that applies at trial in a particular case. In defamation actions, the substan-

*Dunlap v. Wayne,* 105 Wn.2d 529, 533–35, 716 P.2d 842 (1986); *Mark v. Seattle Times,* 96 Wn.2d 473, 486–87, 635 P.2d 1081 (1981), *cert. denied,* 457 U.S. 1124, 73 L. Ed. 2d 1339, 102 S. Ct. 2942 (1982).

■■ The initial question on summary judgment is whether the statement at issue is capable of a defamatory meaning. If the answer is in the affirmative, it is then the jury's function to determine whether the statement is in fact defamatory. *Miller v. Argus Pub'g Co.,* 79 Wn.2d 816, 820 n.3, 490 P.2d 101 (1971); *Amsbury v. Cowles Pub'g Co.,* 76 Wn.2d 733, 738, 458 P.2d 882 (1969). A statement is defamatory if "it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." Restatement (Second) of Torts § 559 (1977). The imputation of a criminal offense traditionally has been categorized as defamatory per se. *See, e.g., Caruso v. Local*

---

tive evidentiary standard is controlled by the classification of the plaintiff as either a private individual or as a public figure or official. *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 41 L. Ed. 2d 789, 94 S. Ct. 2997 (1974); *New York Times Co. v. Sullivan,* 376 U.S. 254, 11 L. Ed. 2d 686, 84 S. Ct. 710, 95 A.L.R.2d 1412 (1964). Thus, becaus⸗ a public figure or official must, at trial, show actual malice by evidence of convincing clarity, the appropriate summary judgment standard is "whether the evidence in the record could support a reasonable jury finding either that the plaintiff has shown actual malice by clear and convincing evidence or that the plaintiff has not." *Anderson v. Liberty Lobby, Inc.,* 106 S. Ct. at 2514.

The Washington Supreme Court, by apparently holding the summary judgment standard dependent upon the defendant's status as media or nonmedia—at least when the nonmedia defendant's alleged defamatory statement is about "private affairs"—differs from the United States Supreme Court's approach, which, in defamation actions, turns on the status of the plaintiff. *See Dunlap v. Wayne, supra; Mark v. Seattle Times,* 96 Wn.2d 473, 635 P.2d 1081 (1981), *cert. denied,* 457 U.S. 1124, 73 L. Ed. 2d 1339, 102 S. Ct. 2942 (1982). Because of this difference in approach, this case presents a situation where we, guided by *Dunlap v. Wayne* and *Mark v. Seattle Times,* apply a stricter evidentiary burden on summary judgment than would the United States Supreme Court. We apply the convincing clarity standard because of The Daily World's status as a media defendant. The United States Supreme Court would not require evidence of convincing clarity because the LaMons, as we determine *infra,* are private individuals. *Anderson v. Liberty Lobby, Inc., supra.* The necessary conclusion in this situation is then that the Washington Constitution does provide heightened protection to media defendants. *Dunlap v. Wayne, supra.*

*690, Int'l Bhd. of Teamsters,* 100 Wn.2d 343, 353, 670 P.2d 240 (1983); *Amsbury v. Cowles Pub'g Co.,* 76 Wn.2d at 737. Even if, as Butler and The Daily World assert, the reference to Mrs. LaMon's conviction could be considered, under the circumstances, innocuous, the reference is certainly capable of defamatory meaning. That is all this court need decide on this issue.

■ Butler and The Daily World contend, however, that, even if defamatory, the statement that Mrs. LaMon was convicted of assault is true. Truth, of course, is a complete defense of a claim of defamation. *Jolly v. Fossum,* 59 Wn.2d 20, 24, 365 P.2d 780 (1961); *O'Brien v. Franich,* 19 Wn. App. 189, 194, 575 P.2d 258 (1978). As a general rule, the truth of an alleged defamatory statement must be measured "as of the time of the defamatory publication." Restatement (Second) of Torts § 581A, comment *g* (1977). Here the record establishes, first, that Mrs. LaMon was convicted of assault in municipal court and, second, that the conviction was, in effect, reversed on appeal to the superior court. Thus, although, as a matter of "historical fact", Mrs. LaMon was convicted of assault, as a matter of "legal fact", the conviction, having been reversed, was voided. *See State v. Hill,* 83 Wn.2d 558, 561, 520 P.2d 618 (1974); *State v. Dixon,* 17 Wn. App. 804, 806, 565 P.2d 1207, *review denied,* 89 Wn.2d 1012 (1977).

We find that the LaMons have made a sufficient showing of falsity and that Butler and The Daily World have not rebutted that showing. The falsity in this case lies not in what was said but in what was left unsaid. To find otherwise would yield harsh results for defamation plaintiffs. For example, a person who is arrested erroneously, based on mistaken identity, thereafter should not be subject to media reports citing his arrest while ignoring his subsequent vindication. The test of truth cannot ignore the test of time.

With respect to the next element in the defamation equation, Butler and The Daily World contend that publication of the article containing the alleged defamation was

privileged because it was a report of a public proceeding. In *Mark v. Seattle Times, supra,* the court approved the following statement of the rule regarding reports of public proceedings contained in the Restatement (Second) of Torts § 611 (1977):

> [t]he publication of defamatory matter concerning another in a report of an official action or proceeding or of a meeting open to the public that deals with a matter of public concern is privileged if the report is accurate and complete or a fair abridgement of the occurrence reported.

*Mark v. Seattle Times,* 96 Wn.2d at 487.

The problem with the respondents' assertion of this privilege is that the statement regarding Mrs. LaMon's conviction did not derive from what took place at the city council meeting. As the respondents concede, the statement was merely background information. That statement was, thus, not within the scope of the privilege asserted.

The next issue we reach is that of fault. The degree of fault necessary to make out a prima facie case of defamation depends on whether the plaintiff is (1) a private individual or (2) a public figure or public official. *Bender v. Seattle,* 99 Wn.2d at 599. If the plaintiff is a private individual, a negligence standard applies. *Bender v. Seattle, supra.* If the plaintiff is a public official or public figure, the plaintiff must prove that the defendant acted with "actual malice", that is, with a knowledge of falsity or with a reckless disregard of truth or falsity. *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 41 L. Ed. 2d 789, 94 S. Ct. 2997 (1974); *New York Times Co. v. Sullivan,* 376 U.S. 254, 11 L. Ed. 2d 686, 84 S. Ct. 710, 95 A.L.R.2d 1412 (1964); *Bender v. Seattle, supra.* Butler and The Daily World argue that the LaMons are public figures and therefore must show actual malice.

The LaMons cannot be classified as public figures. We find it unnecessary, however, to elaborate upon this conclusion because we also conclude that, under the lesser standard of fault that a private plaintiff must show, the LaMons

have not met their burden by evidence of convincing clarity. The LaMons base their argument, under either standard of fault, upon their contention that Butler and The Daily World knew the statement to be false because Butler knew the contents of the order dismissing the action against Mrs. LaMon.

Under the negligence standard, a plaintiff may recover for a defamatory falsehood "on a showing that in publishing the statement, the defendant knew or, in the exercise of reasonable care, should have known that the statement was false, or would create a false impression in some material respect." (Italics omitted.) *Taskett v. KING Broadcasting Co.*, 86 Wn.2d 439, 445, 546 P.2d 81 (1976).

We reject, first, the contention that Butler knew the statement to be false. Knowledge of the contents of the superior court order is not necessarily equivalent to a knowledge of the legal effect of that order. Butler admits in her deposition that the court clerk read the order to her over the telephone but Butler asserts that she understood the order to mean that it "was not the type of dismissal that negated the judgment [of conviction]." The LaMons have presented no evidence that contradicts Butler's assertion.

We reject, next, any contention that the defendants, in the exercise of reasonable care, should have known the statement about the conviction was false. The superior court order of dismissal is not entirely clear as to its legal effect. That order states that "the above action [City of Westport v. LaMon] be dismissed with prejudice." The order goes on to require *the defendants* to pay all costs. The order says nothing about voiding or negating the judgment, although that is the legal effect of the order. Butler, a lay person, exercised reasonable care by contacting the city attorney, who confirmed her impression that the order did not negate the conviction. The LaMons did not present any evidence that the city attorney told Butler otherwise. The LaMons' evidence would not support a reasonable jury finding that they have shown negligence by clear and con-

vincing evidence. Under the circumstances, Butler, as a matter of law, must be held to have acted reasonably and conscientiously before publishing. The fact that what she published was false does not mean she acted negligently. The media are not to be held strictly liable for their mistakes.

The last issue concerns the LaMons' contention that the trial judge erred in refusing to disqualify himself based upon Mrs. LaMon's affidavit of prejudice. The LaMons contend that the trial judge did not disqualify himself on the ground that a marital community is entitled to but one affidavit of prejudice.

This issue is one of first impression in this state. The controlling statute, RCW 4.12.050, states in pertinent part:

> Any party to or any attorney appearing in any action or proceeding in a superior court, may establish such prejudice by motion, supported by affidavit that the judge before whom the action is pending is prejudiced against such party or attorney, so that such party or attorney cannot, or believes that he cannot, have a fair and impartial trial before such judge . . . no party or attorney shall be permitted to make more than one such application in any action or proceeding . . .

Under the language of the statute, the resolution of this issue turns on whether Mr. and Mrs. LaMon are each, under the facts of this case, entitled to file an affidavit of prejudice because each is a "party."

In the only case we have found that has confronted this issue, *Romero v. Felter*, 83 N.M. 736, 497 P.2d 738 (1972), a husband and wife each claimed damages, in different amounts, from the publication of an alleged libelous letter that referred to both the husband and wife. The Supreme Court of New Mexico reasoned that, because the plaintiffs each had a separate cause of action that he or she could pursue against the defendant and because the plaintiffs asserted their separate causes of action, each plaintiff, husband and wife, was entitled to disqualify a trial judge under a statute similar in effect to RCW 4.12.050. *Romero v. Felter*, 497 P.2d at 740–41. Underlying the *Romero* decision

was the recognition that marital status does not destroy the individual legal identities of the husband and wife. *Romero v. Felter,* 497 P.2d at 739–40.

 Washington courts have also recognized that the marital relationship does not destroy the separate legal identities of the spouses. *Christie v. Maxwell,* 40 Wn. App. 40, 43, 696 P.2d 1256, *review denied,* 104 Wn.2d 1002 (1985); *see also Freehe v. Freehe,* 81 Wn.2d 183, 187, 500 P.2d 771 (1972). Following the reasoning in *Romero,* we conclude that recognition of separate identities should be extended to RCW 4.12.050 to allow a husband and wife each to file an affidavit of prejudice when each can be considered a "party" by virtue of a separate cause of action which that "party" has and actually asserts.

In the instant case, however, Mr. and Mrs. LaMon do not assert, nor do they possess, separate causes of action. The alleged defamation referred solely to Mrs. LaMon, and Mr. LaMon has no individual cause of action based upon its publication. It is only by being a part of the marital community that Mr. LaMon has joined in this action.

Consequently, the LaMons are entitled to one affidavit of prejudice under RCW 4.12.050 because they are but one "party" for purposes of this action. Because they exercised their right under this statute by applying for the disqualification of Judge Schumacher, Judge Kirkwood properly denied their application for his disqualification.

The trial court's order of summary judgment is affirmed.

WORSWICK, C.J., and ALEXANDER, J., concur.

Reconsideration denied September 4, 1986.

Review granted by Supreme Court October 28, 1986.