[No. 53196–0.   En Banc.   March 10, 1988.]

EDWARD LAMON, ET AL, *Petitioners*, v. BETTY BUTLER, ET AL, *Respondents*.

*Jack L. Burtch,* for petitioners.

*Brown, Edwards, Lewis & Janhunen,* by *Curtis M. Janhunen,* for respondents.

*P. Cameron DeVore, Marshall J. Nelson,* and *Stuart R. Dunwoody* on behalf of Allied Daily Newspapers, amici curiae for respondents.

DURHAM, J.—The plaintiffs in this case sued a newspaper and one of its reporters for allegedly defamatory statements appearing in its news articles. The trial judge dismissed the plaintiffs' cause of action by summary judgment. The Court of Appeals affirmed, holding that the plaintiffs had failed to make a prima facie showing of the defendants' fault. Although our analysis differs somewhat from that of the Court of Appeals, we also affirm the trial court's decision.

On July 2, 1972, an altercation took place between Lorraine LaMon and John Peterson. Both Lorraine LaMon and her husband, Edward, were charged with assault. Edward LaMon's count was dismissed at trial, but Lorraine LaMon was convicted in the Westport Municipal Court. Lorraine LaMon appealed to the Grays Harbor County Superior Court. That appeal was dismissed by stipulation of the parties on November 10, 1972. The order of dismissal states that the superior court action was dismissed with prejudice, but it does not expressly state what effect the dismissal would have on the lower court conviction. For purposes of this opinion, however, we assume that the lower court conviction was indeed negated.

At that time, Betty Butler was responsible for reporting news in the Westport area for The Daily World, a newspaper of general circulation in Grays Harbor County. Butler learned of the superior court's dismissal of Lorraine La-Mon's appeal by calling the county clerk's office. A clerk there read the order to Butler over the telephone. Butler discussed the effect of that order with the Westport city attorney involved in Lorraine LaMon's appeal. The city attorney told her that the dismissal did not negate the municipal court conviction.

Based on her understanding of these events, Butler wrote at least five articles between 1974 and 1980 in which she mentioned Lorraine LaMon's municipal court conviction without also mentioning the superior court dismissal.[1]

---

[1]The five articles were dated August 13, 1974, September 15, 1975, September 11, 1979, September 25, 1979 and April 17, 1980. Because the first three articles

Those articles did not focus primarily on Lorraine LaMon's assault conviction, but instead concerned the status of related litigation. In that related litigation, the LaMons sued the Westport police chief, John Regan, for false arrest arising out of the assault incident and for a failure to provide proper police protection to the LaMons over a number of years.[2] Butler's references to the assault conviction were used as background material in explaining the LaMon–Regan litigation.

The LaMons filed a complaint for defamation against Butler and The Daily World in Grays Harbor County Superior Court on September 24, 1981. The LaMons alleged that Butler's articles were defamatory by implying that Lorraine LaMon remained convicted of assault. Prior to trial, the LaMons unsuccessfully attempted to disqualify two Superior Court judges by filing affidavits of prejudice. Ultimately, Judge Kirkwood entered a summary judgment in favor of the defendants on December 22, 1983, dismissing the LaMons' cause of action. The Court of Appeals affirmed the dismissal, holding that the LaMons had failed to make a sufficient prima facie showing of the defendants' fault.[3] We granted the LaMons' petition for review.

---

were published more than 2 years before the LaMons filed their complaint, the statute of limitations bars any action on them. *See* RCW 4.16.100(1). The other two articles are the focus of this case.

Additionally, Butler helped to write a story that appeared in The Daily World on October 20, 1978, which stated that Lorraine LaMon's conviction was upheld on appeal. The 2–year statute of limitations prevents any action on this article as well.

[2] The LaMons also named John Peterson as a defendant in that action, alleging that he executed an "erroneous and false" assault complaint against them. Peterson was later dismissed from the case on the motion of the LaMons.

[3] The Court of Appeals also concluded that the LaMons had succeeded in proving other elements of defamation by clear and convincing evidence, namely, falsity, defamatory meaning, and unprivileged communication. Because we hold that there was no triable issue as to the defendants' fault, we need not address the Court of Appeals discussion of the other elements.

SUMMARY JUDGMENT

Washington case law has set out certain principles to be applied in defamation cases. A defamation plaintiff must prove the following elements: a defamatory and false statement, an unprivileged communication, fault, and damages. *Mark v. Seattle Times*, 96 Wn.2d 473, 486, 635 P.2d 1081 (1981), *cert. denied*, 457 U.S. 1124 (1982); *Sims v. KIRO, Inc.*, 20 Wn. App. 229, 233, 580 P.2d 642, *review denied*, 91 Wn.2d 1007 (1978), *cert. denied*, 441 U.S. 945 (1979); Restatement (Second) of Torts § 558 (1977). If the plaintiff is a public figure or public official, then the level of fault that he must show is actual malice. If, on the other hand, the plaintiff is a private figure, then he need show only negligence. *Taskett v. KING Broadcasting Co.*, 86 Wn.2d 439, 445, 546 P.2d 81 (1976). Finally, this court has recently held that a defamation plaintiff's standard of proof depends on the status of the defendant. The standard of proof is "clear and convincing evidence" against a media defendant, and "a preponderance of the evidence" against a nonmedia defendant regarding private affairs. *See Guntheroth v. Rodaway*, 107 Wn.2d 170, 175–76, 727 P.2d 982 (1986); *Dunlap v. Wayne*, 105 Wn.2d 529, 534–35, 716 P.2d 842 (1986); *Mark*, at 486–87.

The parties have presented numerous arguments as to the proper application of these principles. The LaMons have argued they are private figures, while The Daily World has argued they are public figures. The LaMons challenged the media/nonmedia distinction as violating First Amendment principles. An amicus curiae brief filed on behalf of Allied Daily Newspapers has proposed that this court apply the higher standard of proof to issues of public concern and the lower standard to issues of private concern. However, because our holding does not require resolution of these questions, we decline to address them. Even if we were to agree with the LaMons' position on all these issues, they would still have the burden at summary judgment of showing by a preponderance of the evidence

that Butler and The Daily World acted negligently. This they have failed to do.

When a defendant in a defamation action moves for summary judgment, the plaintiff has the burden of establishing a prima facie case on all four elements of defamation. *See Guntheroth,* at 175; *Dunlap,* at 542; *Mark,* at 486. The prima facie case must consist of specific, material facts, rather than conclusory statements, that would allow a jury to find that each element of defamation exists. *Herron v. Tribune Pub'g Co.,* 108 Wn.2d 162, 170, 736 P.2d 249 (1987); *Guntheroth,* at 175. The nonmoving party is entitled to have the evidence viewed in a light most favorable to him and against the moving party. *Herron,* at 170.

The only evidence the LaMons have submitted to show the defendants' negligence is Lorraine LaMon's affidavit, in which she concludes that Butler knew that the statements were false because the order of dismissal was read to her over the telephone. Lorraine LaMon implies that Butler should be charged with knowledge of the order's contents, and we agree. However, the order of dismissal does not on its face give any indication of its effect on the municipal court conviction. The order indicates only that the superior court action is dismissed. The most that can be said is that reading the order would put one on notice to inquire further. The record shows, however, that Butler did, in fact, inquire further. She discussed the order with the city attorney involved in the case. According to Butler's deposition, the city attorney told her that the superior court dismissal did not affect Lorraine LaMon's conviction. Accordingly, Butler had no way of knowing that her statements were incorrect.

These facts do not constitute a prima facie case of negligence, even if we consider all the evidence and all the reasonable inferences from the evidence in favor of the LaMons. The LaMons are not entitled to an inference that the city attorney might have told Butler something other than what Butler now remembers. The LaMons did not

present any evidentiary material to controvert Butler's version of the city attorney's statements. When a nonmoving party fails to controvert the facts supporting a summary judgment motion, those facts are accepted as true. *See Washington Osteopathic Med. Ass'n v. King Cy. Med. Serv. Corp.*, 78 Wn.2d 577, 579, 478 P.2d 228 (1970); *see also Zurita v. Virgin Islands Daily News*, 578 F. Supp. 306, 309 (D.V.I. 1984); *Hideout Records & Distribs. v. El Jay Dee, Inc.*, 601 F. Supp. 1048, 1053 (D. Del. 1984) (and cases cited therein). A reasonable trier of fact could reach but one conclusion from this evidence: the defendants did not act negligently. Accordingly, the LaMons did not present a prima facie case on the issue of fault, and summary judgment was properly entered against them.[4]

### SCOPE OF ISSUES ON APPEAL

The LaMons have argued that it would be unfair for their case on appeal to be decided on the issue of fault. They contend that they did not have notice that the summary judgment hearing would include the issue of fault, because neither the trial judge nor the defendants addressed it below. They conclude that it would be unfair for this court to decide the appeal on the fault issue when it was not argued below.

We find this argument to be without merit. First, the LaMons were furnished with notice that they had to present a prima facie case on the issue of fault in order to

---

[4]Our decision today does not violate the LaMons' constitutional right to a jury trial. Const. art. 1, § 21. We are well aware that summary judgment decisions should not involve the resolution of factual issues. Such is the province of the fact finder at trial. Yet, Washington courts have held many times that summary judgment should be granted when reasonable persons, giving all reasonable inferences to the nonmoving party, could only conclude that the moving party is entitled to judgment. In such cases, there is no genuine issue of material fact. *See, e.g., Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982); *Morris v. McNicol*, 83 Wn.2d 491, 494–95, 519 P.2d 7 (1974). When there is no genuine issue of material fact, as in the instant case, summary judgment proceedings do not infringe upon a litigant's constitutional right to a jury trial. *See Nave v. Seattle*, 68 Wn.2d 721, 725, 415 P.2d 93 (1966), *appeal dismissed*, 385 U.S. 450 (1967); *Diamond Door Co. v. Lane–Stanton Lumber Co.*, 505 F.2d 1199, 1203 (9th Cir. 1974).

survive the defendants' summary judgment motion. The defendants' memorandum in support of summary judgment quoted the following language from *Mark v. Seattle Times,* 96 Wn.2d 473, 635 P.2d 1081 (1981), *cert. denied,* 457 U.S. 1124 (1982):

> Under our cases, a defamation plaintiff must show four essential elements: falsity, an unprivileged communication, fault, and damages. To make out a prima facie case for purposes of avoiding a summary judgment in favor of respondents, Mark would have to allege as to each element facts which would raise a genuine issue of fact for the jury.

(Citations omitted.) *Mark,* at 486. By reading this memorandum, the LaMons received notice that if they did not present evidence on the issue of fault, they ran the risk of summary judgment being entered against them.

■ Second, an appellate court can sustain the trial court's judgment upon any theory established by the pleadings and supported by the proof, even if the trial court did not consider it. *Wendle v. Farrow,* 102 Wn.2d 380, 382, 686 P.2d 480 (1984). The pleadings establish a defamation cause of action, an essential element of which is the defendants' fault. Therefore, dismissal for a failure to satisfy the burden of proving fault is based on a theory established by the pleadings. Furthermore, this theory is supported by proof in the record, most notably Butler's deposition, which was uncontroverted by the LaMons. We conclude that the fault issue was properly before us.

### AFFIDAVITS OF PREJUDICE

The final issue in this case concerns affidavits of prejudice. Affidavits of prejudice are the means by which litigants in this state can prevent a judge who they perceive to be biased from hearing their case. Affidavits of prejudice are governed by RCW 4.12.040 and 4.12.050, which provide in relevant part:

> No judge of a superior court of the state of Washington shall sit to hear or try any action or proceeding when it shall be established as hereinafter provided that said

judge is prejudiced against any party or attorney, or the interest of any party or attorney appearing in such cause. . . .

RCW 4.12.040.

Any party to or any attorney appearing in any action or proceeding in a superior court, may establish such prejudice by motion, supported by affidavit that the judge before whom the action is pending is prejudiced against such party or attorney, so that such party or attorney cannot, or believes that he cannot, have a fair and impartial trial before such judge . . .

RCW 4.12.050.

We have summarized the effect of these statutes as follows:

Under these statutes and under our decisions a party litigant is entitled, as a matter of right, to a change of judges upon the timely filing of a motion and affidavit of prejudice against a judge about to hear his cause or any substantial portion thereof on the merits. Such a motion and affidavit seasonably filed presents no question of fact or discretion. Prejudice is deemed to be established by the affidavit and the judge to whom it is directed is divested of authority to proceed further into the merits of the action.

*State v. Dixon,* 74 Wn.2d 700, 702, 446 P.2d 329 (1968).

However, the right to file affidavits of prejudice is not unlimited: "[N]o party or attorney shall be permitted to make more than one such application in any action or proceeding under this section and RCW 4.12.040." RCW 4.12-.050.

In this case, Lorraine LaMon filed an affidavit of prejudice against Judge Kirkwood and Edward LaMon filed an affidavit of prejudice against Judge Schumacher.[5] The LaMons argue that because they are each parties, they each have independent rights to file affidavits of prejudice under RCW 4.12.050.

[5]The record does not disclose the disposition of the affidavit filed against Judge Schumacher. Since Judge Kirkwood ultimately ruled on the case, he evidently refused to recuse himself.

■■ Analysis of this issue revolves around the interpretation of "party" in RCW 4.12.050. Are co–plaintiffs each parties to an action, or instead, do they together constitute one party? This is apparently an issue of first impression in this state. The term "party" is not defined in RCW 4.12.050. However, one of the definitions of "party" in Black's Law Dictionary reads as follows:

> "Party" is a technical word having a precise meaning in legal parlance; it refers to those by or against whom a legal suit is brought, whether in law or in equity, *the party plaintiff or defendant, whether composed of one or more individuals* and whether natural or legal persons; all others who may be affected by the suit, indirectly or consequently, are persons interested but not parties.

(Italics ours.) Black's Law Dictionary 1010 (5th ed. 1979).[6] Under this definition, the LaMons together would constitute a single party.

This same result has been reached by the Oregon Supreme Court when interpreting a statute similar to ours. The Oregon statute provided that "no party or attorney shall be permitted to make more than two applications in any action or proceeding under this act." *U'Ren v. Bagley,* 118 Or. 77, 85, 245 P. 1074, 46 A.L.R. 1173 (1926) (quoting section 45–3, Oregon Laws). The Oregon Supreme Court interpreted the term "party" in this statute in the following manner:

> "Party" means either plaintiff or defendant, and includes all persons belonging to the particular class: 40 Cyc[lopedia of Law and Procedure] 146 [(1912)]. "Party"

---

[6]Black's Law Dictionary also provides a less restrictive definition of "party", which reads:

> A person concerned or having or taking part in any affair, matter, transaction, or proceeding, considered individually. A "party" to an action is a person whose name is designated on record as plaintiff or defendant. Term, in general, means one having right to control proceedings, to make defense, to adduce and cross–examine witnesses, and to appeal from judgment.

(Citation omitted.) Black's Law Dictionary, at 1010. As we explain later in this opinion, we decline to use such an expansive definition of "party" in construing RCW 4.12.050.

is used in a collective sense and if there be a plurality of plaintiffs, they are all only one party litigant.

*U'Ren*, at 85. *See also* 46 Am. Jur. 2d *Judges* § 212 (1969).

We find this holding to be persuasive. If we were to hold that each plaintiff and each defendant were entitled to file an affidavit of prejudice, then scores of judges could be disqualified in a single case. The Legislature could not have intended that result. Statutes must be interpreted so as to avoid absurd results. *General Tel. Co. v. Utilities & Transp. Comm'n*, 104 Wn.2d 460, 471, 706 P.2d 625 (1985). Therefore, we hold that the language of RCW 4.12.050 limits co–plaintiffs or co–defendants to the filing of a single affidavit. The LaMons were only entitled to file a single affidavit of prejudice.[7]

The trial court's decision is affirmed.

BRACHTENBACH, ANDERSEN, and CALLOW, JJ., concur.

DOLLIVER, J., concurs in the result.

UTTER, J. (dissenting)—I dissent on two grounds. First, this court should unequivocally reject the distinction between media/nonmedia defendants in determining the applicable standard of proof in libel cases. The majority states that the standard of proof depends upon the status of the defendant: "clear and convincing evidence" against a media defendant and "preponderance of the evidence" against a nonmedia defendant. Majority, at 220. To perpetuate this distinction, even while stating that it would not

---

[7]The LaMons argue that even if they were entitled to file only one affidavit of prejudice, then Judge Kirkwood should have disqualified himself upon receiving Lorraine LaMon's affidavit of prejudice. The premise underlying this argument is that Judges Schumacher and Kirkwood should have given priority to Lorraine LaMon's affidavit of prejudice, presumably because the cause of action was more hers than Edward's. However, there was no reason for the judges to do so. Both of the LaMons were named as plaintiffs in the case; therefore, either one had the right to file the single affidavit to which they were jointly entitled. Because they each had this right, the judges had no way of knowing which affidavit was controlling. There is no evidence in the record to show that the LaMons indicated that one affidavit had priority over the other. Accordingly, we cannot conclude that Judge Kirkwood erred in hearing this case.

make any difference in deciding this case, majority, at 221, only lends confusion to an area of law that desperately needs greater clarity.

Second, I believe that the LaMons have presented sufficient evidence of fault to overcome defendant's motion for summary judgment. I concur with the conclusions reached on these arguments by Justice Dore in his dissenting opinion and offer further arguments in support of them here.

# I

In affirming the trial court's decision to grant defendants' motion for summary judgment, the Court of Appeals held that "[a] defamation plaintiff resisting a *media* defendant's motion for summary judgment must establish a prima facie case by evidence of *convincing clarity*." (Some italics mine.) *LaMon v. Butler,* 44 Wn. App. 654, 657, 722 P.2d 1373 (1986). While noting correctly that this standard of proof was not required by the United States Supreme Court, the Court of Appeals reasoned from recent opinions of this court that media defendants have greater protection than ordinary citizens similarly engaged in the exercise of First Amendment rights. *LaMon,* at 657 (citing *Dunlap v. Wayne,* 105 Wn.2d 529, 716 P.2d 842 (1986)). Such a conclusion is not warranted and should be corrected.

There are three problems with the media/nonmedia distinction in our current approach to standard of proof issues in libel law. Each of them strongly suggests that the distinction should be dropped.

## A
### Sullivan Standards Misconstrued

First, to the extent that the heightened standard of proof came to be applied as a result of state court interpretations of United States Supreme Court decisions, those decisions have been misconstrued. In *New York Times Co. v. Sullivan,* 376 U.S. 254, 11 L. Ed. 2d 686, 84 S. Ct. 710, 95 A.L.R.2d 1412 (1964), the Court held that in defamation cases where the plaintiff is a public official, a prima facie

case must be established with evidence of "convincing clarity", including a showing of actual malice. *Sullivan*, at 285–86. This twin standard of actual malice and convincing clarity was later extended to cases where the plaintiff is a "public figure". *Curtis Pub'g Co. v. Butts*, 388 U.S. 130, 18 L. Ed. 2d 1094, 87 S. Ct. 1975 (1967). We adopted these standards of fault and proof for public figure plaintiffs in *Grayson v. Curtis Pub'g Co.*, 72 Wn.2d 999, 436 P.2d 756 (1967). While only the plurality of the Court would have extended this twin standard to comments about private individuals which pertained to matters of "general public interest", *Rosenbloom v. Metromedia, Inc.*, 403 U.S. 29, 29 L. Ed. 2d 296, 91 S. Ct. 1811 (1971), this state nonetheless adopted the *Sullivan* standard for such comments because we felt constitutionally bound to follow the *Rosenbloom* plurality. *Miller v. Argus Pub'g Co.*, 79 Wn.2d 816, 490 P.2d 101 (1971).

However, in reconsidering the issue 3 years later, the United States Supreme Court held that the *Sullivan* standards were not constitutionally mandated when the plaintiff was a private individual; hence, the states were free to provide greater protection to defamed private individuals than to public figures. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 41 L. Ed. 2d 789, 94 S. Ct. 2997 (1974). Once again following the cue from United States Supreme Court, Washington modified the standard for private person plaintiffs in defamation actions against the media. In *Taskett v. KING Broadcasting Co.*, 86 Wn.2d 439, 546 P.2d 81 (1976), this court overruled *Miller*. We stated that the *Sullivan* standard of liability "imposes a totally unacceptable burden" when applied to private plaintiffs and that, henceforth, such plaintiffs need only show ordinary negligence. *Taskett*, at 444.

*Taskett* expressly addressed only one aspect of the *Sullivan* twin standard, that of fault. The substantive evidentiary standard to be applied was left unstated. However, the logic which compelled us to adopt a lesser standard of liability for actions by private plaintiffs strongly suggests

that the standard of proof should likewise be lower. To have the nature of the plaintiff determine the standard of liability but have the status of the defendant determine the standard of proof is confusing and inconsistent. Yet this is where our case law currently stands.

The higher standard of convincing clarity has occasionally been applied by state courts to suits by private persons even though the case authority applying this standard involved public officials or public figures. The first case applying this standard to a private individual was *Sims v. KIRO, Inc.,* 20 Wn. App. 229, 580 P.2d 642, *review denied,* 91 Wn.2d 1007 (1978), *cert. denied,* 441 U.S. 945 (1979). There the court stated that a plaintiff must present evidence "of a sufficient quantum to establish a prima facie case with convincing clarity." *Sims,* at 237. While following *Taskett* insofar as the standard of fault to be applied, the court applied the *Sullivan* standard of proof, even though Sims was a private citizen and traditionally entitled to greater protection of his reputation than a public figure. To support its application of the convincing clarity standard rather than that of simple preponderance, the court cited two Washington cases—*Chase v. Daily Record, Inc.,* 83 Wn.2d 37, 515 P.2d 154 (1973) and *Exner v. AMA,* 12 Wn. App. 215, 529 P.2d 863, 75 A.L.R.3d 603 (1974). However, both of these cases involved plaintiffs who were public figures for whom the application of the *Sullivan* standards of fault and proof was constitutionally compelled.

The application of this heightened evidentiary standard was later challenged by the private plaintiff in *Mark v. Seattle Times,* 96 Wn.2d 473, 635 P.2d 1081 (1981), *cert. denied,* 457 U.S. 1124 (1982), but the argument was rejected by this court. We stated then that for "policy reasons, rooted in the First Amendment . . . an early testing of plaintiff's evidence by a convincing clarity burden continue to be persuasive." *Mark,* at 487. *Chase* was again cited as the source for this rule.

The last case in this evolution was *Dunlap v. Wayne,* 105 Wn.2d 529, 716 P.2d 842 (1986). There we noted for the

first time that the cases applying the "convincing clarity" standard had involved media defendants (although it is equally accurate to say that those cases, with the exception of *Sims* and *Mark,* involved plaintiffs who were either public officials or public figures) and that "First Amendment concerns at that time supported the special protection that we extended . . ." *Dunlap,* at 534. The court suggested that the same First Amendment concerns were not implicated when a nonmedia defendant was being sued for a statement about private affairs; thus, whenever a nonmedia defendant was involved "the usual rules governing summary judgment should control", presumably including a simple preponderance of the evidence standard. *Dunlap,* at 535. This media/nonmedia defendant distinction in defamation actions was reiterated without comment in *Guntheroth v. Rodaway,* 107 Wn.2d 170, 176, 727 P.2d 982 (1986) and is repeated in the majority opinion in the current case.

Thus, the convincing clarity standard of proof came to be applied in libel suits against media defendants as a result of mistaken interpretations of United States Supreme Court decisions.

### B
### CURRENT DISTINCTION IS CONTRARY TO THE
### FIRST AMENDMENT

Second, the media/nonmedia defendant distinction in defamation actions by private individuals is contrary to the First Amendment. Since this court's media defendant distinction currently rests upon "policy reasons, rooted in the First Amendment", *Mark,* at 487, it is important to consider that a clear majority of the Justices on the United States Supreme Court and several federal courts addressing the issue have stated that the First Amendment does *not* support granting the media special protection beyond that available to individual citizens. In *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.,* 472 U.S. 749, 86 L. Ed. 2d 593, 105 S. Ct. 2939 (1985), five Justices signed separate opinions explicitly concluding that the First Amendment

requires the equal treatment of media and nonmedia defendants and a sixth, Chief Justice Burger, agreed with this conclusion. Justice White was emphatic in opposing any media/nonmedia distinction in defamation law.

> None of our cases affords such a distinction; to the contrary, the Court has rejected it at every turn. It should be rejected again, particularly in this context, since it makes no sense to give the most protection to those publishers who reach the most readers . . . with the most misinformation and do the most damage to private reputation.

(Footnote omitted.) *Dun & Bradstreet,* at 773 (White, J., concurring).

In a dissenting opinion joined by three other members of the Court, Justice Brennan stated categorically that a media/nonmedia distinction in defamation law is

> irreconcilable with the fundamental First Amendment principle that "[t]he inherent worth of . . . speech in terms of its capacity for informing the public does not depend upon the identity of its source . . ."

*Dun & Bradstreet,* at 781, quoting *First Nat'l Bank v. Bellotti,* 435 U.S. 765, 777, 55 L. Ed. 2d 707, 98 S. Ct. 1407 (1978). Justice Brennan further emphasized the problems in defining "media" and suggested that any definition would soon become obsolete. Thus, he concludes that in the context of defamation law,

> the rights of the institutional media are no greater and no less than those enjoyed by other individuals or organizations engaged in the same activities.

*Dun & Bradstreet,* at 784.

A clear majority of the United States Supreme Court unequivocally rejects any media/nonmedia distinction in libel law. This conclusion has since been strongly supported by two federal appellate courts. *Garcia v. Board of Educ.,* 777 F.2d 1403, 1409–11 (10th Cir. 1985); *In re IBP Confidential Business Documents Litig.,* 797 F.2d 632, 642 (8th Cir. 1986). The message is now loud and clear: distinguishing between media and nonmedia defendants in libel cases

is contrary to the First Amendment. We should not continue to hold otherwise.

## C
### WASHINGTON CONSTITUTION

Third, even assuming that the states can give greater protection to media than to nonmedia defendants without violating either the First or Fourteenth Amendments, it has not been determined whether the Washington Constitution does in fact provide for such a distinction. In *Dunlap,* this court noted that "the Washington Constitution may provide heightened protection to media defendants." *Dunlap,* at 534 n.1 (citing Const. art. 1, § 5 and *State v. Coe,* 101 Wn.2d 364, 679 P.2d 353 (1984)). In the present case, this issue was not raised before the Court of Appeals. But that court nonetheless concluded from its evaluation of Washington case law and the footnote in *Dunlap* that the Washington Constitution "*does* provide heightened protection to media defendants". (Italics mine.) *LaMon,* at 657 n.2.

Such a definitive statement by the Court of Appeals is unwarranted. First, the language of article 1, section 5 is hardly unambiguous on this point. There is no differentiation between freedom of speech and press and, hence, no clear grounds for distinguishing levels of protection for comments from media and nonmedia sources. Second, the footnote cited in *Dunlap* goes only so far as to suggest that article 1, section 5 *may* provide heightened protection to the media in defamation cases. However, it was only a suggestion, was not essential to the holding in the case, and, most importantly, has never been raised in arguments before this court. Third, the special protection provided by the "convincing clarity" evidentiary standard has not been sought by the media defendants in this case as a state constitutional right; it is the petitioners who raise the issue on appeal claiming that the state constitution affords no such enhanced protection. To allow the language of the Court of Appeals to stand granting state constitutional protection to the media which is not granted to individual citizens of the

state is highly unsatisfactory. The media defendant has not urged its adoption and this court has not been presented with any arguments using the nonexclusive criteria of *State v. Gunwall,* 106 Wn.2d 54, 720 P.2d 808 (1986), or other reasons mandating heightened state constitutional protection.

The media/nonmedia defendant distinction in our defamation law should be dropped. The appropriate evidentiary standard should be governed solely by the nature of the plaintiff, in the same manner that we determine which standard of liability to apply. A public figure plaintiff would therefore need to prove actual malice by clear and convincing evidence and a private person would only need to show negligence by simple preponderance of the evidence. The status of the defendant is irrelevant.

It is altogether proper to make the nature of the plaintiff the determining factor. The two basic rationales for the strict *Sullivan* standards are the need to promote vigorous and robust debate on matters and personalities affecting public policy and the ability of public figures to use the media to rebut false statements made about them. Neither of these rationales is implicated when a libel suit is brought by a private person.

Abolishing the media/nonmedia distinction would be consistent with recent decisions of the United States Supreme Court and federal courts of appeal which have clarified the standards since our earlier cases. It would also be consistent with this court's reasoning in *Taskett* where it adopted "ordinary negligence" as the standard of fault for defamation cases involving a private person suing a media defendant.

The distinction between media and nonmedia defendants is faulty and should no longer be employed. I believe that "the best way forward is to take two steps back" and correct our mistake. The proper standard of proof in any libel action should depend solely on the nature of the plaintiff. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986). Otherwise we perpetuate a body

of law under which two defendants engaged in the same conduct may suffer vastly different penalties simply because one is a member of the media and the other is not.

## II

The Court of Appeals determined, and the majority does not disagree, that the LaMons are private persons for purposes of this litigation. Thus, they would be entitled to recover if they can show by a preponderance of the evidence that the statements made about them were false, had a defamatory meaning, were made negligently by the defendant, and were not otherwise privileged communication. *See Guntheroth*, at 175; *Dunlap*, at 542. As the nonmoving party in a summary judgment proceeding, the LaMons are further entitled to have the evidence and all reasonable inferences construed in the light most favorable to them and against the defendants. *Herron v. Tribune Pub'g Co.*, 108 Wn.2d 162, 736 P.2d 249 (1987). Applying the appropriate evidentiary standard, I believe that the LaMons have presented a prima facie case and are entitled to proceed to trial.

The Court of Appeals concluded that the LaMons had provided sufficient evidence to show all the elements of defamation except defendants' fault. That court ruled that the LaMons had not made a prima facie showing of negligence and upheld summary judgment for the defendants. On this basis alone the majority affirms the decision.

The issue before us is whether there is sufficient evidence from which a trier of fact could reasonably conclude that defendants Butler and The Daily World *"knew or, in the exercise of reasonable care, should have known"* that the statements made about the LaMons were false. *Taskett*, 86 Wn.2d at 445. While the majority, like the Court of Appeals, examines only the statements made regarding the assault conviction, the LaMons' cause of action actually rests upon three allegedly defamatory statements. In addition to the false statements regarding the convictions, Butler and The Daily World are alleged to have made false

statements to the effect that the LaMons' civil rights litigation against the police chief was dismissed in federal court for being "frivolous" when in fact there was a substantial recovery, and to the effect that the civil rights suit was "connected" with the alleged assault incident when, in fact, there was no connection whatsoever.

These statements were made not once, but over the course of several years. Butler continued to make these statements even *after* the LaMons had notified her and The Daily World of their falsity. Although the statute of limitations limits the LaMons' suit to those statements published in September 1979 and April 1980, the record contains several other articles published before then containing the same defamatory remarks. The false statements that were made shortly after the reversal of LaMon's assault conviction may well have been the result of honest mistake. The LaMons are nonetheless entitled to argue that it is at least negligent and perhaps reflects actual malice when the defendant reporter and newspaper persist in printing the same mistaken and defamatory comments for 7 years.

The strongest basis for the LaMons' action lies in the false reporting of an assault conviction in municipal court that was later reversed by dismissal in superior court. Butler stated that after she heard of the superior court order dismissing the action against the LaMons, she did not know its effect on the municipal court conviction. However, Butler did not take the time to read the order herself. Butler Deposition, at 13. Had she done so, she would have noted that the superior court judge ordered that the "above action be dismissed with prejudice"; and that the "above action" clearly referred to the City of Westport's assault charges against the LaMons, not merely the appeal of the municipal court conviction. Clerk's Papers, at 66.

Although our law has since changed, the rule had been well established at the time the order was issued that dismissal of a superior court action voids a prior municipal conviction. *See State v. Buckman,* 51 Wn.2d 827, 322 P.2d

881 (1958). The majority's characterization of the superior court order as a "dismissal of Lorraine LaMon's appeal" is inexplicable when the language of the order is given its plain and simple meaning. Majority, at 218.

Butler asserts that she contacted the Westport city attorney regarding the implications of the dismissal. According to her unsupported recollection of the conversation, the city attorney told her that the original municipal court conviction still stood despite the superior court's dismissal of the case. Butler Deposition, at 13–14. The majority is correct in stating that the LaMons offer no direct evidence that this conversation did not take place or that the city attorney said something other than what Butler now recalls. However, the LaMons have submitted evidence that it was the city attorney himself who initially proposed the order dismissing the case against them. Clerk's Papers, at 63. It is at least arguable that the same city attorney who proposed dismissing the case against the LaMons in the first place would not later tell a reporter that the assault conviction was not affected. This evidence and the reasonable inference from it presents a genuine issue of material fact sufficient to overcome the defendants' motion for summary judgment. For this reason we cannot accept Butler's version of events at face value.

The two other false statements made by the defendants in the publications at issue here further suggest that the LaMons have an adequate factual basis for their complaint. Butler continued to write that the LaMons' civil rights action against the police chief was dismissed as being "frivolous", despite knowing that in fact the LaMons were successful in their suit in federal district court. In this instance, Butler cannot claim to have been unaware of the true facts of the case. The LaMons had earlier paid for several large advertisements, published in the same newspaper, reprinting verbatim the findings of fact and judgment of the federal district court granting them relief and the memorandum opinion of the Ninth Circuit Court of

Appeals affirming the judgment. Clerk's Papers, at 41. Butler admitted in her deposition that she knew of the advertisements. Butler Deposition, at 35. In addition, Butler falsely reported that the civil rights action "stemmed from" and was "connected with" the assault conviction. She later admitted in deposition that she knew that the basis for the LaMons' suit against the police chief was a denial of equal protection and had nothing to do with the prior municipal court conviction. Butler Deposition, at 27–28.

It is difficult to reconcile these facts with the majority's conclusion that no trier of fact could reasonably find the defendants at fault. The LaMons clearly have sufficient evidence with which to proceed to trial. The Court of Appeals decision should be reversed and the case remanded for trial.

PEARSON, C.J., and GOODLOE, J., concur with UTTER, J.

DORE, J. (dissenting)—The majority holds that the LaMons have not established a prima facie case of negligence with respect to this defamation action, and therefore uphold a summary judgment motion dismissing the case. I believe that whether or not such negligence was present is a question of fact, which cannot be resolved by summary judgment. I dissent, as I would remand this case for trial to decide whether or not Butler and The Daily World were negligent when publishing the false and defamatory statement in their newspaper.

### PROPER STANDARD OF REVIEW

The majority opinion implicitly supports a position that "a defamation plaintiff's standard of proof depends on the status of the defendant." Majority, at 220. The majority holds that a plaintiff must present a prima facie case with "clear and convincing" evidence against a media defendant, but only by a "preponderance of the evidence" against nonmedia defendants. While admittedly the majority states that the LaMons cannot even meet the preponderance of evidence standard of proof—a result I believe is clearly

wrong—its failure to clarify this issue of the proper standard of review is inexcusable considering the recent United States Supreme Court case in *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.,* 472 U.S. 749, 86 L. Ed. 2d 593, 105 S. Ct. 2939 (1985). In *Dun & Bradstreet,* five justices explicitly held that any distinction between media and nonmedia defendants violated the First Amendment. *Dun & Bradstreet,* 472 U.S. at 765, 773 (White, J., concurring), 472 U.S. at 774, 781 (Brennan, J., dissenting). Subsequent federal courts, following the decision in *Dun & Bradstreet,* have rejected this media/nonmedia distinction. *See Garcia v. Board of Educ.,* 777 F.2d 1403, 1409–10 (10th Cir. 1985); *In re IBP Confidential Business Documents Litig.,* 797 F.2d 632, 642 (8th Cir. 1986).

Therefore, if the evidence presented by the LaMons, and all reasonable inferences which can be drawn from that evidence, establishes a prima facie case of defamation by a preponderance of the evidence, the motion for summary judgment should be denied. I believe that in this case such a prima facie cause of action has been established.

### NEGLIGENT CONDUCT

The majority concludes that the LaMons have not established that Butler acted negligently. I disagree. Butler asserts that after she was read the superior court order, she did not know its effect on Lorraine LaMon's municipal court assault conviction. She further asserts that she then contacted the Westport City Attorney's Office, which supposedly informed her that the Superior Court's dismissal did not affect the original assault conviction. I find this explanation strains credulity, and I believe that a trial is required to determine whether Butler was negligent.

The superior court order dismissing the municipal court action read as follows:

> This cause coming on for hearing on motion of the defendants by and through their attorney of record, . . . to dismiss the action and the same being stipulated by counsel, [attorneys] for plaintiff, and the Court being

fully advised in the premises, it is ordered that the said motion be and the same is hereby granted: It is ordered that the above action be dismissed with prejudice. It is further ordered, adjudged and decreed that the defendants pay all costs in the matter.

Clerk's Papers, at 66. I do not believe that any lawyer could read this order and not conclude that the original conviction was reversed. Either Butler has fabricated the results of her conversation with the Westport City Attorney's Office, or she mischaracterized the order when she talked with that office. In either event, a fact finder could certainly find her actions negligent, and this case should therefore not be disposed of by summary judgment.

### CONCLUSION

I dissent to the majority opinion. I believe the majority fails to clarify the proper standard of proof which the LaMons must meet to resist the motion for summary judgment. I would hold that there is a genuine issue of fact as to whether Butler's conduct was negligent. I would remand for trial.

Reconsideration granted July 6, 1988.