[No. 8899-5-III. Division Three. March 23, 1989.]

*In the Matter of the Marriage of* BELINDA DEHOLLANDER, *Respondent, and* WILLIAM DEHOLLANDER, *Appellant.*

696

*F. Steven Lathrop,* for appellant.

*John Gilreath* and *Cone, Gilreath & Korte,* for respondent.

THOMPSON, C.J.—William DeHollander appeals the decree dissolving his marriage to Belinda McMillen. He assigns error to the court's distribution of property. We reverse and remand.

Ms. McMillen is a longtime employee of the Department of Social and Health Services (DSHS). She earns approximately $21,000 per year. Mr. DeHollander is a self–employed beekeeper and carpenter, with earnings of $5,900 in 1985. The two began seeing each other in August 1984. Mr. DeHollander moved into Ms. McMillen's home in November 1984. They were engaged in December, married in March 1985, and separated 18 months later, in early September 1986.

During the courtship, Mr. DeHollander and Ms. McMillen discussed buying some property and building a dream home. They looked at land together, and in November 1984, they viewed 5 acres on Burroughs Road near Ellensburg which they decided met their requirements (hereinafter referred to as Burroughs Road property or BRP). In January 1985, before their marriage, Mr. DeHollander purchased the BRP in his name only, making a $2,500 down payment. Both before and during the marriage, Ms. McMillen made substantial contributions of her separate money for improvements on the BRP, which included the erection of a barn/shop with living quarters. The marital

community also contributed its earnings and labor toward the improvements. After the parties separated, Mr. DeHollander borrowed money from his parents to pay the balance due on the land contract.

At the time of the marriage, Ms. McMillen owned separate property, including Templeton Mutual Funds, a bank account, an IRA, and her state retirement account. During the marriage, the community deposited part of her earnings from DSHS in those accounts. Ms. McMillen also owned a home in Ellensburg in which the couple lived. She made the mortgage payments from her earnings and paid an LID assessment out of their 1985 tax refund. Mr. DeHollander used his earnings during marriage to pay monthly mortgage payments due on his separate real property in King County.

The characterization of the BRP as separate or community property was the primary issue before the trial court. It found that although Mr. DeHollander had purchased the property in his name, the intent of both parties was that the property was purchased as the site of their dream home. According to the trial court, "The . . . property . . . had most if not all of the characteristics of property held as tenants in common prior to the marriage and of property that had been converted to community property after the marriage."

The court awarded the BRP to Ms. McMillen subject to an undivided half interest in Mr. DeHollander. The property was ordered sold within 6 months. Ms. McMillen was to receive a minimum of $18,322 from the proceeds, which was the sum of money from her separate funds the court found she contributed to the property. In the alternative, the court held Mr. DeHollander could purchase the property during that 6 months by paying Ms. McMillen $21,750, half of the $43,500 at which the property was valued at trial.

The court awarded each party the separate property they had at the time of marriage, plus all contributions made during marriage to separate property from community

earnings. The court specifically found that community earnings contributed to Ms. McMillen's separate properties were "more than offset by her substantial contribution of support to the marital community . . ." It reasoned: "[D]uring the marriage petitioner earned an overwhelmingly higher amount of income than did respondent and her earnings were the primary source of support of the parties during the marriage . . ."

Mr. DeHollander disputes these findings. He also contends the court did not make a just and equitable distribution of property as required by RCW 26.09.080. That statute provides:

> In a proceeding for dissolution of the marriage . . . the court shall . . . make such disposition of the property . . . either community or separate, as shall appear just and equitable after considering all relevant factors including, but not limited to:
> (1) The nature and extent of the community property;
> (2) The nature and extent of the separate property;
> (3) The duration of the marriage; and
> (4) The economic circumstances of each spouse at the time the division of property is to become effective[.]

First, Mr. DeHollander asserts the court erred in treating the BRP as community property instead of his separate property. He notes that contributions to the separate property of one spouse by the other spouse do not change the character of the separate property unless the funds are so commingled that it is no longer possible to distinguish them. *In re Estate of Witte*, 21 Wn.2d 112, 125, 150 P.2d 595 (1944). In such circumstances, the contributing spouse has a right of reimbursement for those contributions. *In re Marriage of Miracle*, 101 Wn.2d 137, 139, 675 P.2d 1229 (1984). *See also In re Marriage of Elam*, 97 Wn.2d 811, 650 P.2d 213 (1982); *In re Marriage of Brady*, 50 Wn. App. 728, 750 P.2d 654 (1988).

However, the situation here is distinguishable from *Miracle, Elam* and *Brady* because it involved acquisition of property during a meretricious relationship. In distributing property acquired during such a relationship, the courts

must "'examine the . . . relationship and the property accumulations and make a just and equitable disposition of the property.'" *In re Marriage of Lindsey,* 101 Wn.2d 299, 304, 678 P.2d 328 (1984) (quoting *Latham v. Hennessey,* 87 Wn.2d 550, 554, 554 P.2d 1057 (1976) and overruling the presumption established in *Creasman v. Boyle,* 31 Wn.2d 345, 196 P.2d 835 (1948)).

> Because *Lindsey* was a dissolution action, the trial court could deal with the case under RCW 26.09.080 and "make such disposition of the property . . . either community or separate as shall appear just and equitable . . .". Thus, the trial court on remand is offered an option—to value the work of the wife on the [separate property] during the meretricious relationship, or to award an interest in the [separate property]—*treating it as though it were community property.*

(Citation omitted. Italics ours.) Washington State Bar Ass'n, *Community Property Deskbook* § 2.6, at SU–9 (Supp. 1985). *See also Warden v. Warden,* 36 Wn. App. 693, 676 P.2d 1037, *review denied,* 101 Wn.2d 1016 (1984).

Given the testimony of the parties' intent, the nature of their relationship at the time they acquired the property, and their joint efforts with respect to it, we find the trial court properly treated the BRP as though it were community property.

Second, Mr. DeHollander asserts that the court erred in establishing a minimum of $18,322 that Ms. McMillen must receive from the sale of the property. His argument here is twofold. He maintains the setting of an "upset figure" is inconsistent with the court's finding that the BRP is community property. And he notes that the $18,322 included both community and Ms. McMillen's separate property contributions.

Just as when community property is contributed to the separate property of one of the spouses, a spouse who contributes separate property to improve community property may have a right of reimbursement. Cross, *The Community Property Law in Washington (Revised 1985),* 61 Wash. L. Rev. 13, 69 (1986). In the latter situation, the right to

reimbursement is weaker; there is a probability the contribution is a gift. Cross, *supra*. However, Mr. DeHollander does not contend all Ms. McMillen's separate property contributions were a gift. Thus, the trial court properly found Ms. McMillen had a right of reimbursement for those contributions.

Nevertheless, Ms. McMillen's separate contribution does not equal $18,322. The testimony was clear as to the source of the cash investments in the BRP. Prior to the marriage, Ms. McMillen paid $2,773 to install a well on the property, and she contributed $6,000 to the "building fund" which the couple used to pay for other improvements. After the marriage, she made two contributions of $1,500 and $4,000 to the building fund. These separate property contributions total $14,273. The $18,322 found by the trial court included approximately $4,000 of contributions that the record establishes were made out of Ms. McMillen's earnings during marriage, *i.e.*, from community funds. "The court, in a divorce action, must have in mind the correct character and status of the property as community or separate before any theory of division is ordered." *Baker v. Baker*, 80 Wn.2d 736, 745, 498 P.2d 315 (1972); *In re Marriage of Hadley*, 88 Wn.2d 649, 656, 565 P.2d 790 (1977). Here, the court erred when it found Ms. McMillen made separate property contributions of $18,322 to the BRP.

Third, Mr. DeHollander contends the trial court should have ordered Ms. McMillen to pay from her proceeds one-half of the amount he borrowed from his parents to pay the remainder due on the land contract.[1] We hold Mr. DeHollander has a right to be reimbursed for the total amount he paid on the land contract after the parties' separation, as well as for his $2,500 down payment. Ms. McMillen does

---

[1] In their briefs, the parties dispute whether the loan in its entirety was used to pay the land contract. It is not apparent from the record what amount Mr. DeHollander paid on the land contract after the parties separated. However, he is entitled to be reimbursed only for that amount and not for any part of the loan which may have gone for something else.

not contend these contributions were a gift to the community. They clearly are the separate contributions of Mr. DeHollander.

Fourth, Mr. DeHollander argues the trial court used an impermissible rationale to justify its award to Ms. McMillen of all the community property contributions to her separate property.

■ Ms. McMillen added several thousand dollars to her separate property accounts and paid a total of $4,644 in mortgage payments on her home from her earnings during marriage.[2] The couple also used community earnings to make payment on Mr. DeHollander's separate King County property, but these payments were far less than the total added to Ms. McMillen's property. In awarding Ms. McMillen all of the community property contributions to her separate property, the trial court reasoned that these contributions were offset by her substantial support of the couple out of her earnings. This rationale is improper; all of the earnings of a spouse during marriage are community property. The fact one spouse, be it husband or wife, may be the major income producer will not justify giving him a larger share of the community property.

In summary, we hold the trial court erred when it (1) found Ms. McMillen had a right of reimbursement from the proceeds of the sale of the BRP for community property contributions made from her earnings, and (2) awarded Ms. McMillen all of the community property contributions to her separate property. We therefore remand the cause and direct the trial court to divide the property in light of the holdings of this opinion and the factors set forth in RCW

---

[2]In a supplemental brief, Ms. McMillen argues for the first time on appeal that the court should offset the benefit enjoyed by the community in using her home as a residence against the community property contributions of money and labor to her home. *Miracle*, at 139. Since this theory was not established on the record in the trial court, we cannot use it to sustain the trial court's award to Ms. McMillen of the community contributions to her house. *LaMon v. Butler*, 110 Wn.2d 216, 223, 751 P.2d 842 (1988).

26.09.080. Both parties shall pay their own attorney fees on appeal.

GREEN and MUNSON, JJ., concur.

After modification, further reconsideration denied April 27, 1989.